# BOARD OF AIRPORT COMMISSIONERS OF THE CITY OF LOS ANGELES ET AL. *v.* JEWS FOR JESUS, INC., ET AL.

No. 86–104.   Argued March 3, 1987—Decided June 15, 1987

O'CONNOR, J., delivered the opinion for a unanimous Court. WHITE, J., filed a concurring opinion, in which REHNQUIST, C. J., joined, *post*, p. 577.

*James R. Kapel* argued the cause for petitioners. With him on the briefs was *James H. Pearson.*

*Jay Alan Sekulow* argued the cause *pro hac vice* for respondents. With him on the brief were *Andrew J. Ekonomou, Barry A. Fisher,* and *Wendell R. Bird.**

JUSTICE O'CONNOR delivered the opinion of the Court.

The issue presented in this case is whether a resolution banning all "First Amendment activities" at Los Angeles International Airport (LAX) violates the First Amendment.

I

On July 13, 1983, the Board of Airport Commissioners (Board) adopted Resolution No. 13787, which provides in pertinent part:

"NOW, THEREFORE, BE IT RESOLVED by the Board of Airport Commissioners that the Central Terminal Area at Los Angeles International Airport is not

---

*Briefs of *amici curiae* urging reversal were filed for the city of St. Louis, Missouri, by *James J. Wilson* and *Edward J. Hanlon;* and for the Airport Operators Council International by *Arthur P. Berg, Anne M. Tannenbaum,* and *Arnold D. Kolikoff.*

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations by *Marsha S. Berzon* and *Laurence Gold;* for the Christian Legal Society et al. by *Michael J. Woodruff, Samuel E. Ericsson, Kimberlee W. Colby,* and *Forest D. Montgomery;* for the Council on Religious Freedom by *Lee Boothby, James M. Parker, Robert W. Nixon,* and *Rolland Truman;* for the Rutherford Institute et al. by *W. Charles Bundren, Ira W. Still III, Wendell R. Bird, Thomas W. Strahan, James J. Knicely,* and *Alfred J. Lindh;* and for the Jesus People U. S. A. Full Gospel Ministries by *Robert L. Graham.*

A brief of *amicus curiae* was filed for the International Society for Krishna Consciousness of California, Inc., by *David M. Liberman.*

open for First Amendment activities by any individual and/or entity;

.      .      .      .      .

"BE IT FURTHER RESOLVED that after the effective date of this Resolution, if any individual and/or entity seeks to engage in First Amendment activities within the Central Terminal Area at Los Angeles International Airport, said individual and/or entity shall be deemed to be acting in contravention of the stated policy of the Board of Airport Commissioners in reference to the uses permitted within the Central Terminal Area at Los Angeles International Airport; and

"BE IT FURTHER RESOLVED that if any individual or entity engages in First Amendment activities within the Central Terminal Area at Los Angeles International Airport, the City Attorney of the City of Los Angeles is directed to institute appropriate litigation against such individual and/or entity to ensure compliance with this Policy statement of the Board of Airport Commissioners . . . ." App. 4a–5a.

Respondent Jews for Jesus, Inc., is a nonprofit religious corporation. On July 6, 1984, Alan Howard Snyder, a minister of the Gospel for Jews for Jesus, was stopped by a Department of Airports peace officer while distributing free religious literature on a pedestrian walkway in the Central Terminal Area at LAX. The officer showed Snyder a copy of the resolution, explained that Snyder's activities violated the resolution, and requested that Snyder leave LAX. The officer warned Snyder that the city would take legal action against him if he refused to leave as requested. *Id.*, at 19a–20a. Snyder stopped distributing the leaflets and left the airport terminal. *Id.*, at 20a.

Jews for Jesus and Snyder then filed this action in the District Court for the Central District of California, challeng-

ing the constitutionality of the resolution under both the California and Federal Constitutions. First, respondents contended that the resolution was facially unconstitutional under Art. I, § 2, of the California Constitution and the First Amendment to the United States Constitution because it bans all speech in a public forum. Second, they alleged that the resolution had been applied to Jews for Jesus in a discriminatory manner. Finally, respondents urged that the resolution was unconstitutionally vague and overbroad.

When the case came before the District Court for trial, the parties orally stipulated to the facts, and the District Court treated the trial briefs as cross-motions for summary judgment. The District Court held that the Central Terminal Area was a traditional public forum under federal law, and that the resolution was facially unconstitutional under the United States Constitution. The District Court declined to reach the other issues raised by Jews for Jesus, and did not address the constitutionality of the resolution under the California Constitution. The Court of Appeals for the Ninth Circuit affirmed. 785 F. 2d 791 (1986). Relying on *Rosen* v. *Port of Portland*, 641 F. 2d 1243 (CA9 1981), and *Kuszynski* v. *Oakland*, 479 F. 2d 1130 (CA9 1973), the Court of Appeals concluded that "an airport complex is a traditional public forum," 785 F. 2d, at 795, and held that the resolution was unconstitutional on its face under the Federal Constitution. We granted certiorari, 479 U. S. 812 (1986), and now affirm, but on different grounds.

## II

In balancing the government's interest in limiting the use of its property against the interests of those who wish to use the property for expressive activity, the Court has identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. *Perry Ed. Assn.* v. *Perry Local Educators' Assn.*, 460 U. S. 37, 45–46 (1983). The proper First Amendment analysis differs depending on whether the area in question

falls in one category rather than another. In a traditional public forum or a public forum by government designation, we have held that First Amendment protections are subject to heightened scrutiny:

> "In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. . . . The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*, at 45.

We have further held, however, that access to a nonpublic forum may be restricted by government regulation as long as the regulation "is reasonable and not an effort to suppress expression merely because officials oppose the speaker's view." *Id.*, at 46.

The petitioners contend that LAX is neither a traditional public forum nor a public forum by government designation, and accordingly argue that the latter standard governing access to a nonpublic forum is appropriate. The respondents, in turn, argue that LAX is a public forum subject only to reasonable time, place, or manner restrictions. Moreover, at least one commentator contends that *Perry* does not control a case such as this in which the respondents already have access to the airport, and therefore concludes that this case is analogous to *Tinker* v. *Des Moines School Dist.*, 393 U. S. 503 (1969). See Laycock, Equal Access and Moments of Silence: The Equal Status of Religious Speech by Private Speakers, 81 Nw. U. L. Rev. 1, 48 (1986). Because we conclude that the resolution is facially unconstitutional under the the First Amendment overbreadth doctrine regardless of the proper standard, we need not decide whether LAX is indeed

a public forum, or whether the *Perry* standard is applicable when access to a nonpublic forum is not restricted.

Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett* v. *Spokane Arcades, Inc.*, 472 U. S. 491, 503 (1985). A statute may be invalidated on its face, however, only if the overbreadth is "substantial." *Houston* v. *Hill, ante*, at 458–459; *New York* v. *Ferber*, 458 U. S. 747, 769 (1982); *Broadrick* v. *Oklahoma*, 413 U. S. 601, 615 (1973). The requirement that the overbreadth be substantial arose from our recognition that application of the overbreadth doctrine is, "manifestly, strong medicine," *Broadrick* v. *Oklahoma, supra*, at 613, and that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 801 (1984).

On its face, the resolution at issue in this case reaches the universe of expressive activity, and, by prohibiting *all* protected expression, purports to create a virtual "First Amendment Free Zone" at LAX. The resolution does not merely regulate expressive activity in the Central Terminal Area that might create problems such as congestion or the disruption of the activities of those who use LAX. Instead, the resolution expansively states that LAX "is not open for First Amendment activities by any individual and/or entity," and that "any individual and/or entity [who] seeks to engage in First Amendment activities within the Central Terminal Area . . . shall be deemed to be acting in contravention of the stated policy of the Board of Airport Commissioners." App. 4a–5a. The resolution therefore does not merely reach the

activity of respondents at LAX; it prohibits even talking and reading, or the wearing of campaign buttons or symbolic clothing. Under such a sweeping ban, virtually every individual who enters LAX may be found to violate the resolution by engaging in some "First Amendment activit[y]." We think it obvious that such a ban cannot be justified even if LAX were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech.

Additionally, we find no apparent saving construction of the resolution. The resolution expressly applies to all "First Amendment activities," and the words of the resolution simply leave no room for a narrowing construction. In the past the Court sometimes has used either abstention or certification when, as here, the state courts have not had the opportunity to give the statute under challenge a definite construction. See, *e. g.*, *Babbitt* v. *Farm Workers*, 442 U. S. 289 (1979). Neither option, however, is appropriate in this case because California has no certification procedure, and the resolution is not "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harmon* v. *Forssenius*, 380 U. S. 528, 535 (1965). The difficulties in adopting a limiting construction of the resolution are not unlike those found in *Baggett* v. *Bullitt*, 377 U. S. 360 (1964). At issue in *Baggett* was the constitutionality of several statutes requiring loyalty oaths. The *Baggett* Court concluded that abstention would serve no purpose given the lack of any limiting construction, and held the statutes unconstitutional on their face under the First Amendment overbreadth doctrine. We observed that the challenged loyalty oath was not "open to one or a few interpretations, but to an indefinite number," and concluded that "[i]t is fictional to believe that anything less than extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty." *Id.*, at 378. Here too, it is

difficult to imagine that the resolution could be limited by anything less than a series of adjudications, and the chilling effect of the resolution on protected speech in the meantime would make such a case-by-case adjudication intolerable.

The petitioners suggest that the resolution is not substantially overbroad because it is intended to reach only expressive activity unrelated to airport-related purposes. Such a limiting construction, however, is of little assistance in substantially reducing the overbreadth of the resolution. Much nondisruptive speech—such as the wearing of a T-shirt or button that contains a political message—may not be "airport related," but is still protected speech even in a nonpublic forum. See *Cohen* v. *California*, 403 U. S. 15 (1971). Moreover, the vagueness of this suggested construction itself presents serious constitutional difficulty. The line between airport-related speech and nonairport-related speech is, at best, murky. The petitioners, for example, suggest that an individual who reads a newspaper or converses with a neighbor at LAX is engaged in permitted "airport-related" activity because reading or conversing permits the traveling public to "pass the time." Reply Brief for Petitioners 12. We presume, however, that petitioners would not so categorize the activities of a member of a religious or political organization who decides to "pass the time" by distributing leaflets to fellow travelers. In essence, the result of this vague limiting construction would be to give LAX officials alone the power to decide in the first instance whether a given activity is airport related. Such a law that "confers on police a virtually unrestrained power to arrest and charge persons with a violation" of the resolution is unconstitutional because "[t]he opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident." *Lewis* v. *City of New Orleans*, 415 U. S. 130, 135–136 (1974) (POWELL, J., concurring); see also *Houston* v. *Hill*, *ante*, at 465; *Kolender* v. *Lawson*, 461 U. S. 352, 358 (1983).

We conclude that the resolution is substantially overbroad, and is not fairly subject to a limiting construction. Accordingly, we hold that the resolution violates the First Amendment. The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE joins, concurring.

I join the Court's opinion but suggest that it should not be taken as indicating that a majority of the Court considers the Los Angeles International Airport to be a traditional public forum. That issue was one of the questions on which we granted certiorari, and we should not have postponed it for another day.