Tracy **HEMRY**, a minor child, by her next friends, Tom **HEMRY** and Deb Hemry; and Kristi Jones, a minor child, by her next friends, Larry Jones and Marie Jones, Plaintiffs,

v.

The **SCHOOL BOARD OF COLORADO SPRINGS SCHOOL DISTRICT NO. 11;** George G. Houston, Principal of Wasson High School; Kenneth Burnley, Superintendent of Colorado Springs School District No. 11; and Paul Kemp, Assistant Superintendent of Colorado Springs School District No. 11, Defendants.

Civ. A. No. 90 S 2188.

United States District Court,
D. Colorado.

April 1, 1991.

---

*See Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042, 1043 (10th Cir.1980).

Richard Gilloon, Ross & O'Brien, Colorado Springs, Colo., Douglas W. Davis, Virginia Beach, Va., Jay A. Sekulow, Christian Advocates Serving Evangelism, Decatur, Ga., for plaintiffs.

Stephen LeBel, Anderson, Johnson & Gianunzio, Colorado Springs, Colo., for defendants.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on the Plaintiffs' motion for preliminary injunction filed December 13, 1990. Oral argument was heard on February 7, 1991. The Court makes the following ORDER as a result of the hearing on the motion for preliminary injunction.

## THE COMPLAINT

The Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief was filed December 13, 1990. Plaintiffs seek relief under 42 U.S.C. § 1983, alleging violations of the First, Ninth and Fourteenth Amendments as well as federal law, due to the vague and arbitrary school policy which works as a prior restraint to prevent minor Plaintiffs from distributing their material in the High School. Minor Plaintiffs are currently students at Wasson High School, in Colorado Springs. The complaint seeks relief from the enforcement or threatened enforcement of the

school district policy which in any manner would obstruct the Plaintiffs from distributing their religious newspaper, "Issues and Answers," in Wasson High School. The complaint is the culmination of the Plaintiffs' efforts to expand the distribution of the newspaper. A description of the factual background is essential to the development of the issues in this case.

### FACTUAL BACKGROUND

The minor Plaintiffs identify themselves as "Christian students" at Wasson High School, who believe it is part of their religious duty to distribute the newspaper published by the Caleb Campaign, in Herrin, Illinois, entitled "Issues and Answers," to their fellow students. The minor Plaintiffs have engaged in distribution of the newspaper outside the school building for the last several months. In October of 1989, the minor Plaintiffs (and others including the youth pastor of the Mesa Hills Bible Church, Joel Barber) initially met with the principal of their high school, Mr. Houston, regarding the minor Plaintiffs' desire to distribute the newspaper. It was the testimony of minor Plaintiffs Jones and Hemry that the purpose of this initial meeting was to acquaint Mr. Houston with the newspaper "Issues and Answers," so that if Mr. Houston saw the newspaper at school, he would "know where it came from." From this initial meeting with Mr. Houston, the minor Plaintiffs, also with the assistance of Pastor Barber, sought to expand the dissemination of the newspaper at Wasson High. Based on the testimony given by the minor Plaintiffs at the hearing, it was clear that they sought to include in the pool of recipients of the newspaper students who were not from their circle of friends at school. Minor Plaintiff Hemry stated in her testimony that she sought the freedom to distribute the newspaper to whomever she chose, not just to her friends.

Much of the testimony at the hearing concerned the nature of the distribution which the minor Plaintiffs sought and are seeking to make.[1] In this regard, the intent of the minor Plaintiffs was the subject of a large portion of testimony. However, the intent of the minor Plaintiffs is only relevant to the extent that it might consequently reflect the actions taken by the school district (in their policy applicable to all schools within the district) and in particular by the Principal of Wasson High, Mr. Houston. Concerning the actions of Mr. Houston, Plaintiffs maintain that Mr. Houston's recent decision to allow the students to distribute their newspaper on the sidewalk closer to the school (they had been previously restricted to the "perimeter" sidewalk further from the school's entrance) is a result of the Plaintiffs' filing of their lawsuit. Although this development might otherwise be indicative of a last-minute change of policy, the Court does not deem such behavior as relevant to the legal analysis appropriate here.

*The School District Policy "IGDB."*

The policy which forms the basis of this controversy is identified as "IGDB" and contains the following provision:

[N]o student shall distribute, in any school, any student publication which:

1. Is obscene as to minors according to current legal definitions.

2. Is libelous according to current legal definitions.

3. Creates a material and substantial disruption of the normal school activity or appropriate discipline in the operation of the school or the rights of other students.

4. Is inconsistent with the educational mission of the District.

(*File:* IGDB, Exhibit D to Plaintiffs' complaint.)

The dispute arises from the application of the policy to limit the distribution made by the minor Plaintiffs to the area outside the school building, and to prohibit the minor Plaintiffs from distributing their newspaper in the hallways of Wasson High. In regard to the distribution made

---

1. The distinction which was drawn at the hearing between "personal" and "general" distribution is discussed further below. The distinction is relevant with regard to the character of the free speech right involved.

by the students, the policy defines the term "distribution" as the

circulation or dissemination of the student publication to students at the time and place of normal school activity or immediately prior or subsequent thereto by means of handing out free copies, selling or offering copies for sale, accepting donations for copies of the publication, or displaying the material in areas of the school which are frequented by students. In dealing with material which is "obscene" or "libelous," the term distribution refers to dissemination of one or more copies whereas in dealing with all other types of material, the term distribution refers to a substantial circulation or dissemination of the student publication so as to make the student publication generally available to students of the subject school.

(Exhibit D to Plaintiffs' complaint.)

The bulk of the factual dispute to which the evidence at the hearing was directed concerned the application by Principal Houston of the term "distribution" to the students' activities in making the newspaper available to others. More specifically, Plaintiffs' contend that the prohibition of distribution in the hallways of the school is a violation of their free speech rights secured by the First Amendment to the United States Constitution.

## THE PRELIMINARY INJUNCTION MOTION

Minor Plaintiffs here seek an order from this Court which would allow them to distribute more widely their newspaper, "Issues and Answers." Plaintiffs contend that the current restrictions which Defendants have applied to their activities of distributing the paper are based on a policy (the IGDB) which is unconstitutionally void for vagueness, and additionally that the policy is unconstitutional as it is based on the "open-ended" discretion of the school administrators (in particular the Principal of Wasson High, Mr. Houston).

Defendants counter this argument by asserting that the IGDB is not unconstitutionally vague, stating that many such policies which are applicable to schools are properly general in nature, as the IGDB is. With regard to the discretion of the school administrators, Defendants argue that the administrators of the school must be allowed the freedom to control their school's environment, but not in such a way as to require the maximum interchange between the students which administrators would then be forced to attempt to regulate (to maintain order).

The Plaintiffs' motion for preliminary injunction is properly analyzed under the standard pronounced in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). The moving party must establish four elements:

(1) substantial likelihood that the movant will eventually prevail on the merits;

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest.

## I. The IGDB Policy Is Not A Content Based Prohibition.

Plaintiffs argued in their motion for preliminary injunction that the IGDB policy amounts to a content based prohibition. Plaintiffs asserted that the present case is indistinguishable from the facts and ruling dictated by *Rivera v. East Otero School Dist. R–1*, 721 F.Supp. 1189 (D.Colo.1989). In *Rivera*, the court held unconstitutional a school policy which specifically banned religious or political materials from distribution on the school premises. In his opinion, Judge Matsch considered whether distribution of "Issues and Answers" in a nondisruptive manner fell within the confines of protected speech and whether the school's policy of restricting distribution is in contravention of that constitutional limitation on governmental authority. *Rivera*, 721 F.Supp. at 1191. There is no such articulated ban on distribution of religious or political materials in the policy under con-

sideration. The fact that the materials which the Plaintiffs wish to distribute in the school hallways is of a religious and political nature does not cause a restriction on the distribution of such materials to be content based. It is clear from the testimony of the minor Plaintiffs and Defendant Houston, the Principal of Wasson High, that the Plaintiffs are not being denied access to other means of distribution. These were clearly available to them, as they were to other groups or individuals who desired to distribute information to Wasson High School students.

*Rivera* also reiterated the principle of *Tinker,* that "[the school] must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Rivera,* 721 F.Supp. at 1194, citing *Tinker v. Des Moines Independent Com. Sch. Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969). In this case it is abundantly clear that there has been no attempt to regulate the content of the Plaintiffs' speech based on an unclearly articulated "fear of disruption." If Plaintiffs are allowed to distribute in the hallways, so must other organizations be allowed the same privilege. The effect of such a decision on the school environment would be devastating to those who strive to maintain some order in the classrooms and hallways.

*II. Forum Analysis Is Appropriate.*

■ In addition to their argument that forum analysis is inappropriate because the holdings of *Rivera v. East Otero School Dist. R–1,* 721 F.Supp. 1189 and *Tinker v. Des Moines,* 393 U.S. 503, 89 S.Ct. at 7, the Plaintiffs argued at the hearing that the level of discretion to be applied by the school administrators rendered the policy unconstitutional under *Board of Airport Com'rs of Los Angeles v. Jews for Jesus,* 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987).

In their motion for preliminary injunction, Plaintiffs argue that the school administrator's decision to restrict distribution of "Issues and Answers" amounted to a ban on the students' rights and, as a content based prohibition, was not justified by any compelling interest. At the time of the hearing, Plaintiffs abandoned this line of reasoning, asserting that the Defendants' response and recent events (students were allowed to distribute their newspaper closer to the school building after the complaint was filed) necessitated such a shift. Plaintiffs then focused their argument on two issues: first, that the IGDB was unconstitutionally applied to the Plaintiffs; and second, that the policy formulated by Mr. Houston, the Principal of Wasson High, was unconstitutional.

At the outset, the Court will note the observation made by the Supreme Court in *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985):

> The Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum. Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.

(Citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

With regard to Plaintiffs' first contention, the Plaintiffs' presented evidence at the hearing that other distributions were being made in the location at the school which was not available to the minor Plaintiffs. Some of the evidence presented concerned distribution of noncurricular "fliers" pertaining to pizza discounts, a piano recital, and a (beer) keg party. Defendants offered testimony, by Mr. Houston, that none of these flyers had been approved for distribution by the school through the appropriate process. Defendants also

presented testimony as to the large number of persons and organizations which are not affiliated with the school and which have sought distribution of materials during the 1990–91 school year. There were a total of forty-two persons or groups which requested such distribution. Mr. Houston testified as to the normal procedure whereby such a person or organization could request distribution, as well as the type of distribution (*e.g.*, information was left in an area designated for pick-up by interested students, such as a leaflet board or in the Principal's office) which is available to such groups (including the Plaintiffs).

Plaintiffs have alleged that the IGDB was unconstitutionally applied to prohibit distribution of "Issues and Answers" in the hallways of Wasson High. Here, the Plaintiffs argue that *Tinker* and *Rivera* negate any need for forum analysis which would otherwise be appropriate. In *Tinker v. Des Moines*, 393 U.S. 503, 89 S.Ct. 733, the Supreme Court addressed the question of whether a high school student's symbolic speech of wearing a black armband to protest the Vietnam War was protected speech in the school setting. This opinion contains the especially noteworthy and oft-cited statement: "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." 393 U.S. at 506, 89 S.Ct. at 736. In holding that the suspension of any student who would refuse to remove an armband would be unconstitutional, Justice Fortas noted that:

> In order for the state in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.

393 U.S. at 509, 89 S.Ct. at 738.

Even assuming, for the sake of argument only, that the above standard was the sole applicable standard (which this Court rejects for reasons discussed below), the testimony of Mr. Houston has illustrated that the prohibition on distribution of Plaintiffs' materials is based not on any desire to avoid the unpleasantness that accompanies an unpopular viewpoint, but rather the desire to maintain some space for the orderly presentation of the school curriculum. If Plaintiffs, as well as the other persons or organizations which have requested permission to distribute at Wasson High, were allowed to distribute their materials in the hallways of the high school, it would hardly result in a theoretical suggestion of disruption. Common sense dictates that the hallways would resemble a three-ring circus. The Court also notes here that with regard to the confines of the *Tinker* decision, Justice Black's dissent in *Tinker* (cited in *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 686, 106 S.Ct. 3159, 3166, 92 L.Ed.2d 549 (1986), and in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 570 at n. 4, 98 L.Ed.2d 592 (1988)) illustrates an important point here:

> I wish therefore, ... to disclaim any purpose ... to hold that the Federal Constitution compels the teachers, parents, and elected officials to surrender control of the American public school system to public school students.

*Tinker*, 393 U.S. at 526, 89 S.Ct. at 746.

Plaintiffs' attempt to focus on the "otherwise protected speech" to the exclusion of forum analysis is in vain. The Supreme Court stated in *Cornelius v. NAACP*, 473 U.S. at 799–800, 105 S.Ct. at 3447–448: "Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities" (citations omitted). Accordingly, Plaintiffs' attempt to exclude forum analysis is unsuccessful.

Finally, in the presentation of Plaintiffs' evidence at the hearing, a large amount of time was spent drawing distinctions between "personal" and "general" distribu-

tions of materials (*e.g.,* "Issues and Answers"), as the distinction is made by the IGDB policy; as well as how the Principal made a determination of when a "general" distribution was taking place. With regard to the question of forum analysis, Plaintiffs urged this was unnecessary due to the unconstitutional application of the policy. Plaintiffs argued that the holdings in *Tinker* and *Rivera* render forum analysis in this case inappropriate. The Court disagrees.

### III. Forum Analysis Applied to the Hallways of Wasson High School.

Because the Court has noted above that the Plaintiff students' right to freely distribute the newspaper "Issues and Answers" inside the High School is not an absolute right of free speech, it is essential to determine the rights of the Plaintiffs, as well as the corresponding duties of the Defendants, in light of the character of the environment in which the speech would take place. Although it is nearly axiomatic that students do not shed their constitutional rights at the schoolhouse gate, *Tinker,* 393 U.S. at 506, 89 S.Ct. at 736, it must also be noted that the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings. *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. at 3159.

### A. The Public Forum

■ Since the United States Supreme Court identified the "public forum" in *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), the Court has continued to further distinguish and categorize the various types of forums, as well as the type of speech restrictions that states may impose in such forums. In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983), the Court identified three distinct categories of forums: "traditional public" forums, which have immemorially been held in trust for the use of the public and have been used for the purposes of assembly; public property which the state has opened for use by the public as a place for expression activity (later referred to as a "limited public" forum); and public property which is not by tradition or designation a forum for public communication (later referred to as a "nonpublic" forum). The Supreme Court also articulated the different types of restrictions and regulation which the state could apply to speech in the three different forums. Based on the analysis discussed above, it is abundantly clear that the hallways of Wasson High School do not constitute a public forum.

### B. The Limited Public Forum

■ This type of forum may exist only when the state, through a practice or policy, has intended to create a public forum when the nature of the property is inconsistent with the expressive activity. The *Cornelius v. NAACP* decision makes two significant observations here: not every instrumentality used for communication is a traditional public forum or forum by designation; and the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. *Cornelius,* 473 U.S. at 803, 105 S.Ct. at 3449 (citations omitted).

■ With regard to regulation of this type of property which the state has opened up for use as a place for expressive activity, the Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. at 955, citing *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). As long as the state retains the open character of this forum, the state is bound by the same standards as apply in a traditional public forum. *Id.*

■ The Defendants offered testimony given by Mr. Houston which tended to show that the purpose of the school hallways is to facilitate the movement of students between classrooms, not to provide a place for a speaker to set up his or her soap box. Additionally, the fact that the policy at Wasson High allowed interested persons and organizations to deposit their

materials at designated locations at the school (which Plaintiffs were also free to do) does not amount to a policy or practice, nor is it an indication of, an intent to create an open forum. Consequently, this Court does not find any evidence tending to support a policy or practice to open the hallways of the school "for indiscriminate use by the general public." *Kuhlmeier,* 108 S.Ct. 562 at 568, citing *Perry Educ. Ass'n,* 460 U.S. at 47, 103 S.Ct. at 956.

### C. The Non-public Forum

■ Because the hallways of Wasson High School are neither a public forum (traditional or otherwise) nor a limited public forum (opened for the purpose of public discourse), the Court now turns its analysis to the nonpublic forum. In discussing the type of forum in *Perry Educ. Ass'n* (which that Court found applicable to public schoolteachers' mailboxes), the Court noted:

> In addition to time, place and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.

*Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. at 955, citing *United States Postal Service v. Council of Greenburgh Civic Assns.,* 453 U.S. 114 at 131, n. 7, 101 S.Ct. 2676, 2686 n. 7, 69 L.Ed.2d 517.

The only applicable regulation in this case is a time, place and manner regulation which has been applied equally to those seeking non-school related distribution within Wasson High School. This fact is not in dispute. There was no evidence submitted by the Plaintiffs which would indicate that the regulation by the school, in the form of its IGDB policy and as implemented by Mr. Houston, was unreasonable or an attempt to suppress expression. Accordingly, the School District, through the Principal of Wasson High School, acted appropriately under the applicable standards for regulation of a nonpublic forum.

### D. The High School's Policy As Executed By Mr. Houston Was Not Unconstitutionally Applied to the Plaintiffs

■ This issue concerns Plaintiffs' final argument, raised at the hearing on their motion for preliminary injunction, that too much discretion resides in Mr. Houston's control. As determined above, the scrutiny applied to such action is determined in accordance with the proper identification of the type of forum. Here, Plaintiffs contend that too much discretion is left in the Principal's hands and that his decision to restrict distribution in the hallways of Wasson High cannot properly be based on any speculative fear of disruption of normal flow of traffic in the hallways. This argument apparently would require the Principal to restrict distribution in the hallways only if and when a disruption actually occurs. However, such a determination to restrict distribution in the event of disruption would do nothing to alleviate the alleged problem of too much discretion lying in the Principal. On the contrary, the Principal would be placed in the untenable position of finding out after an actual disruption exactly which group making a distribution was responsible for the disruption and penalizing that group only. This would dramatically increase the discretionary determination that would have to be made by the Principal. In addition, and of more prospective significance, this action would most firmly supplant the decision of the Principal with that of the Court. See *Tinker,* 393 U.S. at 507, 89 S.Ct. at 736.

Although the *Tinker* case asserts the proposition that fear is not enough to silence speech, the situation presented here is readily distinguishable. Plaintiffs' reliance on the *Jews For Jesus,* 482 U.S. 569, 107 S.Ct. 2568, is misplaced. There also exists no issue as to whether the discretion of the Principal was exercised in a narrowly partisan or political manner. See *Board of Educ., Island Trees v. Pico,* 457 U.S. 853, 870, 102 S.Ct. 2799, 2809, 73 L.Ed.2d 435 (1982).

## CONCLUSION

Based on the foregoing determinations that the Defendants did not regulate the content of Plaintiffs' speech, but instead enforced reasonable time, place and manner restrictions on the minor Plaintiffs' distribution of the newspaper, which restrictions were necessary in light of the nature and purpose of the nonpublic forum, Plaintiffs have not met their burden of establishing the four elements of the *Lundgrin v. Claytor* test to prevail on their motion. Accordingly, it is ORDERED that the Plaintiffs' motion for injunctive relief is DENIED.