Michael A. LEBRON, Plaintiff–Counter–
Defendant–Appellee,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),
Defendant–Appellant,

and

Transportation Displays, Incorporated,
Defendant–Counter–Claimant.

No. 1494, Docket 93–7127.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1993.

Decided Dec. 27, 1993.

Reversed and Remanded Feb. 21, 1995.

Reargued May 11, 1995.

Decided Oct. 30, 1995.

On Rehearing Dec. 29, 1995.

Gloria C. Phares, New York City (Paul, Hastings, Janofsky & Walker, New York City, R. Bruce Rich, Bernadette McCann Ezring, Jonathan Bloom, Marc Brotman, Weil, Gotshal & Manges, New York City, David D. Cole, Center for Constitutional Rights, Washington, D.C., of counsel), for Plaintiff–Counter–Defendant–Appellee.

Kevin T. Baine, Washington, DC (Nicole K. Seligman, Steven M. Farina, Williams & Connolly, Washington, DC, William G. Ballaine, Mark S. Landman, Siff Rosen P.C., New York City, of counsel), for Defendant–Appellant.

Before NEWMAN, Chief Judge, and LUMBARD and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff–Counter–Defendant–Appellee Michael A. Lebron petitions for rehearing of this Court's decision in *Lebron v. National Railroad Passenger Corp. (Amtrak),* 69 F.3d 650 (2d Cir.1995) (*"Lebron I"*), familiarity with which is assumed. We deny the petition for rehearing, but amend *Lebron I* as follows:

1. The sentence at 658 slip op. 8511, lines 21–25, is deleted.

2. The sentence at 659 slip op. 8512, lines 15–22, is amended to read as follows:

Because Lebron insisted that TDI display his proposed advertisement only on the Spectacular, his attempt to attack Amtrak's policies regarding the acceptance of advertisements in Penn Station generally, rather than on the Spectacular, amounts, in substance, to a facial challenge to those policies as they might be applied to advertisements other than Lebron's and to locations not at issue.

3. The two sentences at 660 page 8515, lines 12–16, are replaced by the following:

We reverse the judgment of the district court and remand for consideration of Lebron's contract claim and TDI's counterclaim for a declaratory judgment that it is entitled to terminate the Lease. Because initial subject matter jurisdiction over Lebron's federal claim is now clear, and a full trial has been "conducted on an expedited basis, upon written submissions," *Lebron I,* 811 F.Supp. [993] at 994, the interests of judicial economy and fairness to the parties counsel that this litigation be completed in federal court.

We note the assertion in Chief Judge Newman's dissent from this disposition of the petition for rehearing that we now approve an inconsistent Amtrak policy because, "as the District Court found, advertisements falling within a broad category of political messages had been displayed in Penn Station." Judge Leval concluded only that a handful of the advertisements shown in Penn Station over the years had been "arguably 'political.'" *Lebron v. National R.R. Passenger Corp. (Amtrak),* 811 F.Supp. 993, 1004 (S.D.N.Y.1993) (referring to advertisements by New York Department of the Environment, New York Department of Commerce, a foundation for muscular dystrophy, and *Plain Truth* magazine; and public service advertisements concerning "subjects such as the homeless, the environment, drunk driving, AIDS awareness, health issues, and race relations"). Amtrak is probably entitled to consider such advertisements as "public ser-

vice announcements" within the meaning of its standard licensing agreement. *See Lebron I,* 69 F.3d at 654. In any event, "Amtrak's billboard space in Pennsylvania Station, even if used in the past for ads of a public service nature, has not become a forum for ads of such pointed political content as Lebron's attack on the makers of Coors beer for promoting 'the Far Right's political agenda.'" *Lebron v. National R.R. Passenger Corp.,* 12 F.3d 388, 394 (2d Cir.1993) (Newman, C.J., dissenting), *rev'd and remanded,* — U.S. —, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995).

We rely upon *Lebron I* with respect to our analysis of the forum issue. *See id.,* at 655–58.

JON O. NEWMAN, Chief Judge, dissenting:

I respectfully dissent from the denial of the petition for rehearing.

When the Court first issued its opinion on the merits of Lebron's First Amendment challenge, it premised substantial portions of its ruling on the view that Amtrak's advertising policy on political messages, whatever the policy's content, was limited in geographic scope to the one large billboard in Penn Station known as "the Spectacular." Lebron's petition for rehearing challenges that premise, pointing out unrefuted contrary evidence in the record, a contrary assumption, if not a finding, underlying the District Court's analysis, and the acknowledgement by Amtrak in its appellate brief that its policy "applies to all advertising in Amtrak's facilities." Brief for Appellant at 7. The Court responds to Lebron's petition by amending its opinion to delete the two passages of the opinion as originally issued that had asserted that Amtrak's policy against political advertisements is limited to the Spectacular.

Though the deletions are fully justified, they leave the Court's legal analysis of Lebron's First Amendment challenge even more vulnerable than I thought it was at the time of the original opinion. *See Lebron I,* 69 F.3d 650, 660 (Newman, C.J., dissenting). For example, the original opinion had concluded that there is no evidence that Amtrak's policy has ever been applied inconsistently "because the policy against political advertising was limited in scope to the Spectacular." Id. at 658. The revised recognition that Amtrak's policy, whatever its content, is not limited in scope to the Spectacular leaves unsupported the majority's view that the policy has not been applied inconsistently. In fact, as the District Court found, advertisements falling within a broad category of political messages had been displayed in Penn Station.[1] The majority has concluded that the policy has been consistently applied by overlooking the instances where it has not been consistently applied. This conclusion, previously reached on a view that the policy applied only to one location, is left in place, even though there is now recognition that the policy applies throughout Amtrak's facilities.

Perhaps the majority now means to rest its ultimate conclusion solely on its view that the relevant forum for purposes of public forum analysis is only the Spectacular. I previously set forth my reasons for thinking that that view is not legally sound. *See id.* at 660–61. With the factual underpinning of the majority's view as to the scope of the Amtrak policy now discarded, I simply note that the public forum view of the majority, even if correct, is irrelevant since, no matter what the scope of the forum, a governmental entity violates the First Amendment when it bars display of political messages pursuant to a "policy" that has been found by a fact-finder, with abundant evidentiary support, to be vague, unwritten, undisseminated, unclear to those

1. The majority again notes, as it did in the initial opinion on the merits, that my dissent from the very first *Lebron* ruling had observed that Penn Station "has not become a forum for ads *of such pointed political content* as Lebron's [proposed ad for the Spectacular.]" 12 F.3d at 394 (emphasis added). The fact that the ads Amtrak previously allowed in Penn Station were only of a general political nature and did not contain political content as "pointed" as Lebron's ad does not detract in any way from the District Court's finding, supported by abundant evidence, that the Amtrak policy has been inconsistently applied. Whether the difference between Lebron's ad and prior ads should have a bearing on the scope of relief, which is the issue I discussed in the prior dissent, is an issue entirely different from whether Amtrak has incurred liability for applying its "policy" inconsistently in violation of the First Amendment.

who must administer it, and inconsistently applied. In *Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987), the Supreme Court found it unnecessary to decide whether the Los Angeles International Airport was a public forum because the governmental ordinance regulating speech on the premises was constitutionally defective. *Id.* at 573–74, 107 S.Ct. at 2571–72. The constitutional defects in Amtrak's "policy" similarly make public forum analysis irrelevant.

I agree with the majority that the state law issues are properly returned to the District Court for further consideration, but I would grant the petition for rehearing.