# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1089

_____

| | | |
|---|---|---|
| Ronald G. Farkas, doing business as Tuxedos; Tina Bryson, doing business as Blondies; Vaunetta Washington, doing business as Big Earl's Goldmine; Tracy Bedford, | * * * * * * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Thomas J. Miller, Attorney General for the State of Iowa; William E. Davis, Scott County Attorney's Office; Mary Richards, Story County Attorney's Office; John P. Sarcone, Polk County Attorney's Office, | * * * * * * | |
| Appellees. | * | |
| _____ | * * | |
| American Association for Nude Recreation, | * * * | |
| Amicus on Behalf of the Appellant. | * * | |

_____

Submitted: June 10, 1998
Filed: August 13, 1998

_____

Before BOWMAN, Chief Judge, BEAM, Circuit Judge, and GAITAN,[1] District Judge.
_____

BEAM, Circuit Judge.

The plaintiffs own, operate, or perform at three Iowa establishments that feature nude dancing. They appeal the district court's[2] decision upholding an Iowa public nudity law against First Amendment challenges. We affirm.

## I.    BACKGROUND

Ronald Farkas, Tina Bryson, and Vaunetta Washington are the respective owners and operators of Tuxedos, Blondies, and Big Earl's Goldmine, all of which feature live, nude dance performances. Tracy Bedford is one of the dancers who regularly performs at Big Earl's Goldmine. These individuals (collectively, "the plaintiffs") filed this action in federal district court, challenging the constitutionality of recent amendments to section 728.5 of the Iowa Code. As amended, the statute provides:

> An owner, manager, or person who exercises direct control over a place of business required to obtain a sales tax permit shall be guilty of a serious misdemeanor under any of the following circumstances:
>
> 1.                          If such person allows or permits the actual or simulated public performance of any sex act upon or in such place of business.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2.		If such person allows or permits the exposure of the genitals or buttocks or female breast of any person who acts as a waiter or waitress.

3.		If such person allows or permits the exposure of the genitals or female breast nipple of any person who acts as an entertainer, whether or not the owner of the place of business in which the activity is performed employs or pays any compensation to such person to perform such activity.

4.		If such person allows or permits any person to remain in or upon the place of business who exposes to public view the person's genitals, pubic hair, or anus.

5.		If such person advertises that any activity prohibited by this section is allowed or permitted in such place of business.

6.		If such person allows or permits a minor to engage in or otherwise perform in a live act intended to arouse or satisfy the sexual desires or appeal to the prurient interests of patrons. However, if such person allows or permits a minor to participate in any act included in subsections 1 through 4, the person shall be guilty of an aggravated misdemeanor.

The provisions of this section shall not apply to a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances and in which any of the circumstances contained in this section were permitted or allowed as part of such art exhibits or performances.

Iowa Code § 728.5. Prior to the amendments, the statute's prohibitions were directed at the "holder of a liquor license or beer permit or any owner, manager, or person who exercises direct control over any [such] licensed premises." Iowa Code § 728.5 (amended 1997). By making its provisions applicable to all "place[s] of business required to obtain a sales tax permit," the new version of the statute forecloses the loophole contained in the old version for so-called "juice bars."

Plaintiffs in this action own or control three of the four juice bars currently operating in Iowa. Because none of these three establishments has a liquor license or sells alcoholic beverages to patrons,[3] they offer nude dancing without violating the statute as originally written. They argue that the amended statute violates the First Amendment's guarantee of free speech, as applied against the states through the Fourteenth Amendment. The district court granted a temporary restraining order enjoining the enforcement of section 728.5 against all of the plaintiffs. The trial on the merits was consolidated with the hearing on the motion for a preliminary injunction. After a bench trial, the court held that the amended statute survives First Amendment scrutiny. The plaintiffs appeal that decision.

## II.    DISCUSSION

By prohibiting "exposure of the genitals or female breast nipple of any person who acts as an entertainer," the Iowa statute essentially requires erotic dancers to wear G-strings and pasties during their performances. The Supreme Court has recognized, however, that totally nude dancing is expressive conduct that is entitled to some measure of First Amendment protection. See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66, 581, 587-88 (1991) (eight of nine Justices taking this position). The state cannot impermissibly infringe on the plaintiffs' right to engage in that constitutionally-protected activity. In Barnes v. Glen Theatre, a fragmented Court found that an Indiana public nudity statute was constitutional as applied to the performance of erotic dances. Id. at 572. The state maintains that Barnes compels us to uphold section 728.5. Before deciding whether Barnes is controlling, we must determine the precedential value of the splintered decision in Barnes. We begin by examining each of the opinions necessary to the judgment in that case.

---

[3]Alcohol is not allowed at Blondies. However, customers of Tuxedos and Big Earl's Goldmine are permitted to bring their own beer and wine, and a separate business entity on the Tuxedos premises has a license to sell beer.

Chief Justice Rehnquist delivered a plurality opinion joined by Justices O'Connor and Kennedy. The plurality analyzed the constitutionality of Indiana's statute prohibiting public indecency under the four-part test set forth in United States v. O'Brien, 391 U.S. 367 (1968). Barnes, 501 U.S. at 567. Under O'Brien, a regulation that burdens expressive activity as distinct from pure speech can be justified if (1) the regulation is within the constitutional power of the government; (2) the regulation furthers an important or substantial government interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment rights is no greater than necessary to further that interest. O'Brien, 391 U.S. at 377.

First, the plurality found that the Indiana statute was a constitutional exercise of the state's police power to provide for the public health, safety, and morals. Barnes, 501 U.S. at 569. Secondly, they determined that the law furthered a substantial government interest in protecting order and morality. Id. Furthermore, they explained that "while the dancing to which [the statute] was applied had a communicative element, it was not the dancing that was prohibited, but simply its being done in the nude." Id. at 571. The plurality therefore found that the government interest was unrelated to the suppression of free expression. Id. at 570-71. Finally, the statutory requirement that dancers wear pasties and G-strings was, in the plurality's view, "the bare minimum necessary to achieve the State's purpose." Id. at 572. Accordingly, finding the O'Brien test satisfied, the plurality held that Indiana's public nudity law did not unconstitutionally intrude on First Amendment freedoms. Id.

Justice Scalia concurred in the judgment upholding the Indiana statute. In his opinion, however, because the law was a general regulation not specifically targeted at expressive conduct, it was not subject to First Amendment scrutiny at all. Id. at 576. Thus, according to Justice Scalia, the applicable standard of review was not the O'Brien test, but merely whether the statute was rationally related to some legitimate government interest. Id. at 580. Applying that test, he found that "[m]oral opposition

to nudity supplies a rational basis for its prohibition," and concluded that "no more than that is needed."  Id.

Justice Souter also filed an opinion concurring in the judgment.  He agreed with the plurality and the dissenters[4] that nude dancing enjoys at least some degree of protection under the First Amendment.  Id. at 581.  He also concurred with the plurality's view that the four-part O'Brien test was the proper standard of review.  Id. at 582.  However, while the plurality found society's moral views sufficient to justify the limitation at issue, Justice Souter relied instead on the state's interest in combating the secondary effects of adult entertainment.  Id.  Citing cases that had upheld zoning restrictions for adult entertainment establishments, he pointed out that in this context, nude dancing "encourages prostitution, increases sexual assaults, and attracts other criminal activity."  Id. at 582 (citation omitted).  Therefore, because the state has a substantial interest in eradicating these harmful secondary effects, it could legitimately restrict the type of entertainment with which the effects are commonly associated.

Justice Souter's determination that the Indiana law furthered the interest in preventing secondary effects was not dependent on any evidence that the Indiana legislature had acted with that specific intent.  Id. at 582-83.  He explained, "Our appropriate focus is not an empirical enquiry into the actual intent of the enacting

---

[4]In dissent, Justices White, Marshall, Blackmun, and Stevens stated that "[t]he nudity element of nude dancing performances cannot be neatly pigeonholed as mere 'conduct' independent of the expressive component of the dance."  Barnes, 501 U.S. at 592-93.  They determined that nude dancing is therefore entitled to the full measure of First Amendment protection.  Id. at 593.  Accordingly, under the dissent's rationale, the Indiana statute could not pass constitutional muster unless narrowly tailored to serve a compelling government interest.  Id.  They determined that the state's ban on this entire category of expressive activity was not the least restrictive means of controlling the secondary effects of adult entertainment.  Id. at 594-95.  Thus, the dissenters concluded that the statute was unconstitutional as applied to nude dance performances.  Id. at 596.

legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." Id. at 582. Additionally, he did not find it necessary for the state to adduce localized evidence that nude adult entertainment was associated with criminal behavior such as prostitution or sexual assault, because the government "'was entitled to rely on the experiences of . . . other [communities].'" Id. at 584 (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51 (1986)).

In his analysis of whether the state's interest was unrelated to the suppression of free expression, Justice Souter addressed the dissent's contention that the state seeks to suppress nude dancing "only because [it] may generate . . . thoughts and ideas in the minds of the spectators [which] may lead to increased prostitution." Id. at 592. Justice Souter argued that, "[t]o say that pernicious secondary effects are associated with nude dancing establishments is not necessarily to say that such effects result from the persuasive effect of the expression inherent in nude dancing." Id. at 585. From his viewpoint, the correlation between criminal conduct on the one hand and nude dancing on the other could just as easily be due to "the concentration of crowds of men predisposed to such activities, or [] the simple viewing of nude bodies regardless of whether those bodies are engaged in expression or not." Id. at 586.

Finally, Justice Souter regarded the requirement of pasties and a G-string as a minor limitation, no greater than essential to further the state's important interest. Id. at 587. For these reasons, he too found that O'Brien was satisfied and concurred in the judgment upholding the Indiana statute.

None of the opinions commanded a majority of the Court. We do not regard the view expressed by Justice Scalia as binding on us, in light of the fact that no other Justice concurred with his major premise—that nude dancing is not an expressive activity that warrants constitutional protection. Thus, we must look for guidance in the opinion of either the plurality or Justice Souter. The Court has instructed that, "[w]hen

a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

We find that the opinion of Justice Souter presented the narrowest resolution of the issues in Barnes, as the plurality opinion is broad enough to encompass the standard he articulated. By sanctioning the promotion of society's moral views as a justification for restrictions on expressive activity, the plurality implied that an interest in diluting the criminal element would likewise suffice. The reverse does not hold true. Justice Souter's failure to join the plurality opinion as well as his separate statements express his reluctance to concede that the state's interest in protecting morality would adequately support the restrictions in question. His opinion therefore provides the most common rationale underlying the Court's judgment in Barnes.

The plaintiffs advance numerous arguments that seek to refute Justice Souter's reasoning and conclusions. Regardless of their strength or weakness, these arguments are unavailing, because we are not free to disregard Supreme Court precedent. We must apply the Barnes analysis as expounded by Justice Souter unless we find that this case is somehow distinguishable.

The plaintiffs argue that Barnes is distinguishable from the instant case because the regulation at issue in Barnes was a general law prohibiting public nudity, while the amendments to section 728.5 specifically target nude dancing in juice bars. We disagree. Justice Souter's formulation in Barnes was not predicated on the general nature of the Indiana statute. He found that the general prohibition on nudity was constitutionally sound as it applied to the specific venue of adult entertainment establishments. Barnes, 501 U.S. at 585 n.2. The plaintiffs cannot distinguish Barnes on the grounds that the Iowa statute does not apply in some broader context. On the

contrary, the narrower reach of the statute at issue here counsels in favor of its constitutionality. Justice Souter explained in <u>Barnes</u> that "the secondary effects rationale on which [he relied] would be open to question if the State were to seek to enforce the statute by barring expressive nudity in classes of productions that could not readily be analogized to [adult-type entertainment]." <u>Id.</u> In terms of the explicit purpose of the amendments to section 728.5, Justice Souter's opinion is therefore precisely on point.

Applying the <u>O'Brien</u> test, we find that section 728.5 does not violate the First Amendment. As the plaintiffs concede, this regulation is clearly within the constitutional power of the state, satisfying the first prong of <u>O'Brien</u>. Under the second prong, we find that the statute furthers a substantial state interest in preventing deleterious secondary effects of nudity in adult entertainment. <u>See</u> <u>Barnes</u>, 501 U.S. at 584-85. This is true despite the unavailability of legislative history showing that the enacting Iowa legislature specifically intended to further that interest. <u>See</u> <u>id.</u> at 582-83. A statute that regulates expressive conduct does not fail constitutional scrutiny as long as we can identify "a current governmental interest in the service of which the . . . statute may be constitutional." <u>Id.</u> at 582.

Furthermore, for the same reasons given by Justice Souter in <u>Barnes</u> and explained ante at 7, we find that the interest in reducing the secondary effects associated with nude dancing is unrelated to the suppression of free expression. <u>Id.</u> at 585-86. Likewise, the requirement under section 728.5 that dancers in juice bars wear G-strings and pasties restricts expression no more than necessary to achieve the state's purpose. <u>See</u> <u>id.</u> at 587. <u>O'Brien</u> is therefore satisfied, and we conclude that the statute is a constitutional limitation on nude dancing.[5]

---

[5]This analysis applies with equal force to the statutory ban on public performances of actual or simulated sex acts.

The plaintiffs assert an additional challenge to section 728.5 on the grounds that it is unconstitutionally vague and overbroad. According to the overbreadth doctrine, "an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'" Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987) (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985)). Although we have determined that the amendments are constitutional in their prohibition of nude dancing in juice bars, the plaintiffs submit that we must nevertheless strike them down because they may chill speech in other constitutionally protected forums. Specifically, the plaintiffs point to the application of the recent amendments to "place[s] of business required to obtain a sales tax permit," arguing that liability to collect sales tax is not an accurate predictor of criminal secondary effects.

A finding of overbreadth is "strong medicine" to be used "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). In this case, we find that the statute's exception for "a theater, concert hall, art center, museum, or similar establishment . . . primarily devoted to the arts or theatrical performances" saves it from being overbroad. The statutory exception appropriately limits the reach of the restrictions to the type of adult entertainment that is associated with harmful secondary effects. Cf. Barnes, 501 U.S. at 585 n.2 (Souter, J., concurring in the judgment). We therefore reject the plaintiffs' overbreadth challenge.

Likewise, we find that section 728.5 is not unconstitutionally vague. In order to avoid a finding of vagueness, a statute must (1) be clear enough to provide a person of ordinary intelligence with notice of what conduct is prohibited, and (2) provide standards for those who enforce the prohibitions. See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). None of the phrases the plaintiffs advance as impermissibly vague fails this test. Persons of ordinary intelligence would not be confused as to the

coverage of the statute's "theater" exception, or the meaning of the terms "simulated sex act," "public performance," or "allows or permits." Mathematical precision is not required in legislation. See id. at 110. Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness. Moreover, "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question.'" Id. at 110 n.15 (quoting American Communications Ass'n v. Douds, 339 U.S. 382, 412 (1950)) (alteration in original).

We have carefully considered each of the plaintiffs' other arguments, and we conclude that they are without merit. Accordingly, we uphold the recent amendments to section 728.5.

## III.  CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-