859 F.Supp. 1239 (1993)
The GOOD NEWS/GOOD SPORTS CLUB, Jordan Heimburger, a minor, by his Next Friend, L. Corbett Heimburger, Christopher Hirt, a minor, by his Next Friend, Peggy Hirt, David Hirt, a minor, by his Next Friend, Peggy Hirt, Comfort Ibe, a minor, by her Next Friend, Afocha Ngozi Ibe, Peggy Hirt, John Hirt, Susan Mallory, George Mallory, Larry Tychsen, Dawn Huffman, Gabor Csengody, Pat Csengody, Afocha Ngozi Ibe, Kathryn Heimburger, and L. Corbett Heimburger, Plaintiffs,
v.
The SCHOOL DISTRICT OF THE CITY OF LADUE, Barbara Sacks, Charles H. Cobaugh, Joyce Follman, Robert Minkler, Ann Boon, and Charles McKenna, in their individual capacities, Defendants.
No. 4:92CV001813 ELF.
United States District Court, E.D. Missouri, Eastern Division.
March 2, 1993.
*1240 Timothy Belz, Principal, Belz and Beckemeier, St. Louis, MO, Carl Howard Esbeck, University of Missouri, Columbia, School of Law, Columbia, MO, Randall Mark England, Mexico, MO, for Good News/Good Sports Club.
Timothy Belz, Principal, Belz and Beckemeier, St. Louis, MO, Carl Howard Esbeck, University of Missouri, Columbia, School of Law, Columbia, MO, Jordan Heimburger, Christopher Hirt, David Hirt, Comfort Ibe, Peggy Hirt, John Hirt, Susan Mallory, George Mallory, Larry Tychsen, Dawn Huffman, Gabor Csengody, Pat Csengody, Afocha Ngozi Ibe, Kathryn Heimburger and L. Corbett Heimburger.
John Gianoulakis, Partner, Kohn and Shands, Robert G. McClintock, St. Louis, MO, for School Dist. of the City of Ladue, Barbara Sacks, Charles H. Cobaugh, Joyce Follman, Robert Minkler, Ann Boon and Charles McKenna.
Robert A. Wulff, Managing Partner, Amelung and Wulff, St. Louis, MO, Kimberlee W. Colby, Center for Law & Religious Freedom, Annandale, VA, for Christian Legal Society.

*1241 MEMORANDUM

FILIPPINE, Chief Judge.
This matter is before the Court for a decision on the merits after trial to the Court. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court enters the following memorandum which it adopts as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.
Plaintiffs brought this action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, alleging that the Use of Premises Policy adopted on July 20, 1992 ("Amended Use Policy") by defendant Ladue School District ("School District") violates plaintiffs' rights under the First Amendment of the United States Constitution. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and has authority to enter declaratory and injunctive relief in the event a constitutional violation is found. 28 U.S.C. §§ 2201, 2202. Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).
Plaintiffs' action is in two counts: Count I alleges violation of the Free Speech clause of the First Amendment; Count II alleges violation of the Religion Clauses of the First Amendment. In support of their Free Speech claim, plaintiffs present the following legal theories: (1) that the Amended Use Policy is facially discriminatory based on the content of an organization's speech; (2) that the plaintiffs have standing to assert the First Amendment rights of Scout programs based on the facially discriminatory no-religion proviso of the Amended Use Policy; and (3) that defendants acted with an unconstitutional motive when they amended the School District's use of premises policy and that this allegedly unconstitutional motive invalidates the Amended Use Policy. In support of their claims under the religion clauses of the First Amendment, plaintiffs present the following legal theories: (1) that the Amended Use Policy is unconstitutional on its face and that plaintiffs have third party standing to raise this issue; and, (2) that the Amended Use Policy is not neutral, in purpose or effect, as to religion and the Policy thus violates the First Amendment's Religion Clauses.
The School District of the City of Ladue ("School District") is a public, six director, school district created pursuant to Missouri law. The individual defendants are current members of the Ladue School Board ("Board" or "School Board"); there is one vacancy on the present Board. The Good News/Good Sports Club ("Club") is a voluntary unincorporated association made up of students and parents residing within the School District. Although the Club is nondenominational, the purpose of the Club is to provide junior high school age children an opportunity to experience constructive interaction with peers and to examine the moral values taught by Christianity. An additional purpose of the Club is to provide one means by which the parent sponsors of the Club can pass on their Christian religious beliefs to young persons.
The format of a typical Club meeting includes an opening prayer, snack, some activity (such as a skit), singing of Christian songs, a discussion based on a Bible reading, and a closing prayer. Some individual plaintiffs are students who have attended meetings and/or would like to attend meetings of the Club in the future. The remaining individual plaintiffs are parents of students residing within the School District whose children have attended Club meetings in the past and/or would like to attend meetings in the future. Those parents would like their children to attend Club meetings.
The Club has its roots in religious clubs for children and adolescents initiated in the late 1970's by Jane Cunningham, a former Board member of the School District.[1] Ms. Cunningham formed the Good News Club[2] while her child was a student at Reed Elementary *1242 School, an elementary school within the School District. The Club traditionally met once a month after school either in Ms. Cunningham's home or the home of another interested adult. The students attending those Club meetings did not utilize School District modes of transportation to get home after the meeting.
The Club began meeting after school at Ladue Junior High School in December, 1988. Ms. Cunningham, or other Club sponsors, applied for permits for the Club to meet at the Junior High School and those permits were granted by defendant Dr. Charles McKenna, Superintendent of the School District. The Club met once a month directly after school for the remainder of the 1988-89 school year and for the 1989-90, 1990-91 and 1991-92 school years. Some, but not all, of the permit applications included the name "Good News" as the title of the group seeking access. The first application to include the word "Bible" or to clearly indicate that the group met for religious purposes was the application filed by plaintiff L. Corbett Heimburger for the 1991-92 school year.
At its public meeting on February 10, 1992, the School Board heard complaints from two parents regarding alleged recruitment of their children to attend Club meetings. The Board also heard comments in support of the Club. The Board directed its attorney to look into the issue of access by religious groups to School District facilities and to examine the Use of Premises Policy adopted in 1986 ("1986 Use Policy"). Citizen comments both for and against access to School District facilities by the Club, comments regarding the nature of the Club, and further discussion regarding the 1986 Use Policy occurred at Board meetings from February, 1992, through July, 1992.
The 1986 Use Policy allowed access to any community or student organization upon application for a permit and depending on availability of space. The attorney for the School District reported at the Board meeting on March 11, 1992, that the 1986 Use Policy might violate the Establishment Clause of the First Amendment. The School District's attorney ultimately recommended adoption of the Amended Use Policy, which was in fact adopted by the Board, in closed session, on July 20, 1992. The Amended Use Policy provides that community groups will be permitted to use School District facilities, upon application for a permit, after 6:00 p.m. on school days and after 8:00 a.m. on other days. The Amended Use Policy also provides, in relevant part:
Permission for use of school facilities after instructional time ends on school days will be granted to Community Groups: (1) for use of District's athletic facilities, provided that the use is limited exclusively to athletic activities; and (2) for meetings of Scouts (Girl, Boy, Cub, Tiger Cub, and Brownies), provided that such meetings shall be limited exclusively to the scout program and shall not include any speech or activity involving religion or religious beliefs.
Subsequent to adoption of the Amended Use Policy, the Club, through plaintiff L. Corbett Heimburger, submitted an application to meet on the first Monday of each month for the 1992-93 school year from 3:00 to 4:00 p.m. Plaintiffs' application was not approved because no group, except Scout groups and groups using the athletic facilities, are allowed to meet until after 6:00 p.m. on school days under the Amended Use Policy. Plaintiffs then brought this action alleging that the restriction on access violates the First Amendment.
Any analysis of whether government regulation restricting access to government property violates the Free Speech Clause of the First Amendment must begin with an analysis of the type of forum to which access is restricted. Initially, this Court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 3446, 87 L.Ed.2d 567 (1985). This Court must determine whether the School District has opened its facilities to the community for expressive activity and, if so, whether the forum thereby created should be categorized as a traditional public forum, a nonpublic forum, or a limited public forum. Following determination of the type of forum, this Court "must assess whether *1243 the justifications for exclusion from the relevant forum satisfy the requisite standard" of review of the government regulation. Id.
No party contends that the School District facilities are traditional public fora. The designation of traditional public forum is reserved for those places that "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. Committee for Indust. Org., 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). Public school facilities, in contrast, are nonpublic government property which "may be deemed to be public forums only if school authorities have `by policy or by practice' opened those facilities `for indiscriminate use by the general public,' ... or by some segment of the public, such as student organizations." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 267, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983)). A public forum is not created "by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802, 105 S.Ct. at 3449.
The analysis of government property must include "consideration of a forum's special attributes ... since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved." Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 650-51, 101 S.Ct. 2559, 2565-66, 69 L.Ed.2d 298 (1981); Perry Educ. Ass'n. 460 U.S. at 44, 103 S.Ct. at 954 ("The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.").
Public school facilities function to meet the educational needs of the students within the school district and a school district "must ... retain the authority to refuse ... to associate the school with any position other than neutrality on matters of political controversy." Hazelwood School Dist. 484 U.S. at 272, 108 S.Ct. at 570. Periodic access by "private non-school-connected groups" does not necessarily convert the nonpublic nature of a public school facility into either a public forum or a limited public forum. Perry Educ. Ass'n, 460 U.S. at 47, 103 S.Ct. at 956. "Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." Id., 460 U.S. at 49, 103 S.Ct. at 957.
Government regulation of a traditional open forum must be "narrowly tailored, content-neutral [and] pertain[] to the time, place and manner of expression...." Lamb's Chapel v. Center Moriches Union Free School Dist., 959 F.2d 381, 386 (2d Cir.), cert. granted, ___ U.S. ___, 113 S.Ct. 51, 121 L.Ed.2d 20 (1992). Those regulations will be upheld under First Amendment scrutiny only "if they `serve a significant government interest, and leave open ample alternative channels of communication.'" Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989)).
Where, by permitting access to designated groups, the state has created a limited public forum, the First Amendment protections afforded to a traditional public forum apply, but "the constitutional right of access ... extend[s] only to other entities of similar character." Perry Educ. Ass'n, 460 U.S. at 47-48, 103 S.Ct. at 956-57. Regulations of nonpublic government property are constitutional as long as they are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's views." Id. at 46, 103 S.Ct. at 955 (citation omitted). Finally, where the state has created a public or limited public forum, the state "is not required to indefinitely retain the open character of [a] facility...." Id.
In Perry Educ. Ass'n, the United States Supreme Court found that teacher mailboxes in a public school were nonpublic fora. The mailboxes were not open for general public access, although certain community groups, such as the YMCA, Scouts, and other civic organizations, were granted periodic access to the mailboxes. 460 U.S. at 47, 103 S.Ct. at 956. The Supreme Court held that "[t]his type of selective access does not transform *1244 government property into a public forum." Id. The Supreme Court further held that restrictions based on subject matter and speaker identity are permissible in a nonpublic forum and that such distinctions "are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves." 460 U.S. at 49, 103 S.Ct. at 957. See also Lehman v. City of Shaker Heights, 418 U.S. 298, 304, 94 S.Ct. 2714, 2718, 41 L.Ed.2d 770 (1974) (holding that subject matter discrimination excluding political speech in a nonpublic forum is permissible; viewpoint discrimination is not permissible).
The 1986 Use Policy created a limited public forum. Any group was permitted to apply for access, which was limited to after school hours and non-school days. The School District, however, retained the right to close the forum and, in adopting the Amended Use Policy, closed the Ladue school facilities until after 6:00 p.m. on school days. Plaintiffs do not contend that the School District did not have the right to close the facility, but that the Amended Use Policy did not have the effect of changing the nature of the forum from a limited public forum to a nonpublic forum. Plaintiffs contend that, because access to the athletic facilities and by Scouting programs[3] is still allowed immediately after school hours, the School District facilities remain a limited public forum. The Court disagrees.
The reason given by the School Board for allowing access to Scouts immediately after school hours is that the School District has a "long-standing tradition of cooperation with scout programs...." Defendant's Ex. L. The Court finds this explanation valid and reasonable. This type of selective access to a community group with a long-standing relationship with the School District does not convert the nonpublic forum of public school facilities into a limited public forum. Scouting activities are compatible with the purposes of public education and, especially in light of the School District's long term relationship with the Scouts, the Court finds that limiting access to Scouting groups is reasonable. During the period of 3:00 to 6:00 p.m., the School District facilities are not open "for indiscriminate use by the general public...." Perry Educ. Ass'n, 460 U.S. at 47, 103 S.Ct. at 956. The facilities are available only for selective access by Scouts and by those wishing to use the athletic facilities. Under the facts of this case, the Court finds that the Ladue Public School facilities are a nonpublic forum from 3:00 to 6:00 p.m.
Because the Court finds that the Amended Use Policy does not create a limited public forum, but that the School District facilities are a nonpublic forum from 3:00 to 6:00 p.m., the restriction on plaintiffs' access immediately after instructional time must only meet the standard of reasonableness. The reasonableness standard is met "when the applicable restrictions `reflect a legitimate government concern and do not suppress expression merely because public officials oppose the speaker's view.'" Lamb's Chapel, 959 F.2d at 386 (quoting Paulsen v. County of Nassau, 925 F.2d 65, 69 (2d Cir.1991)). Furthermore, "the restriction `need only be reasonable; it need not be the most reasonable or the only reasonable limitation.'" International Soc'y for Krishna Consciousness v. Lee, ___ U.S. ___, ___, 112 S.Ct. 2701, 2708, 120 L.Ed.2d 541 (1992) (emphasis in original) (quoting United States v. Kokinda, 497 U.S. 720, 736, 110 S.Ct. 3115, 3124, 111 L.Ed.2d 571 (1990) (plurality opinion)).
If the justifications given are facially reasonable, the Court must then determine whether the proffered reasons are mere pretext for viewpoint discrimination. Cornelius, 473 U.S. at 797, 105 S.Ct. at 3446. Although the government may restrict access to a nonpublic forum based on the subject matter of speech, the Court must determine whether the restriction "conceal[s] a bias against the viewpoint advanced by the excluded speakers." Id., 473 U.S. at 812, 105 S.Ct. at 3454.
*1245 One reason provided by the School District for amending the 1986 Use Policy is that the type of access allowed under the 1986 Policy might violate the Establishment Clause of the First Amendment. Plaintiffs contend that the 1986 Policy did not violate the Establishment Clause. The question whether or not the 1986 Policy violated the Establishment Clause, however, is not before this Court; this Court must determine only whether defendants' concern over a possible constitutional violation, resulting in closing the limited public forum from 3:00 to 6:00 p.m., was a true reason and a reasonable justification for amending the 1986 Use Policy.
In a recent case involving a claim of violation of the Establishment Clause, the Supreme Court held:
The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause. It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which "establishes a [state] religion or religious faith, or tends to do so." Lynch [v. Donnelly], 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984).
Lee v. Weisman, ___ U.S. ___, ___, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992).
In a number of cases, United States Courts have found Establishment Clause violations where access to school district facilities by religious groups was allowed. In Bell v. Little Axe Indep. School Dist. No. 76, 766 F.2d 1391 (10th Cir.1985), the court recognized "the special concern for religious neutrality in the public school setting[.]" Id. at 1402. The court held that the school violated the Establishment Clause when it allowed religiously-oriented student meetings in the school before classes began. Id. at 1407. In Lubbock Civil Liberties Union v. Lubbock Indep. School Dist., 669 F.2d 1038 (5th Cir.), reh'g denied, 680 F.2d 424 (1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983), the court found an Establishment Clause violation where a school district policy permitted students to gather either before or after school hours for Bible readings and other religious activity.
In a case with facts similar to the instant case, a district court found that permitting a Bible study club to meet immediately after classes would have violated the Establishment Clause. Quappe v. Endry, 772 F.Supp. 1004 (S.D.Ohio 1991), aff'd, 979 F.2d 851 (6th Cir.1992). Although the facts of these and other cases may be distinguishable from the facts in the instant case, this does not diminish the reasonableness of defendants' concern regarding a possible Establishment Clause violation under the 1986 Use Policy. The credible evidence at trial was that the School Board had received complaints from some parents and citizens within the School District regarding meetings of the Club directly after school. At least one parent complained that her child had been approached and solicited by another student to attend meetings of the Club.
Plaintiffs contend that the fear of an Establishment Clause violation was not reasonable and was not a valid consideration when the School Board amended the Use Policy to restrict plaintiffs' after school access. The United States Court of Appeals for the Eighth Circuit, however, has found that concern regarding an Establishment Clause violation is a "reasonable justification" for placing restrictions on access to school facilities for religious groups. Salinas v. School Dist. of Kansas City, 751 F.2d 288, 290 (8th Cir. 1984). Under the circumstances of this case, and in light of relevant Establishment Clause case law, the Court finds that defendants' concern was reasonable.
Defendants also assert they were concerned that a number of religious groups, hate groups, and/or other controversial groups might seek access immediately after school hours under the 1986 Use Policy. The record does not reflect that any such group had sought access under the 1986 Policy. It is proper, however, for a state to consider the possible large number of groups which might seek access to state facilities. Heffron, 452 U.S. at 653, 101 S.Ct. at 2566. In Heffron, the International Society for Krishna Consciousness ("ISKCON") challenged a Minnesota *1246 state regulation restricting solicitation at the state fair to designated booths. ISKCON contended that this restriction infringed its First Amendment right to proselytize and raise funds for its religious organization. In upholding the state regulation, the Supreme Court recognized that it was proper for the state to consider the possibility that all other groups at the state fair might also seek to solicit from the general public by walking through the fairgrounds although no evidence was presented that any other such group had asserted the right. Id.
The Court finds that it was reasonable for defendants to consider the possibility that a large number of religious, political, or philosophical groups might seek access to school facilities while students were still present for school-related after school activities. Even though no evidence was presented that hate groups or other controversial groups planned to seek access under the 1986 Use Policy, "the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum." Cornelius, 473 U.S. at 810, 105 S.Ct. at 3453.
Plaintiffs contend that the restriction on access to the school facilities until after 6:00 p.m. violates their Free Speech rights because it is more convenient for the Club to meet immediately after school and because the Club will be destroyed if denied access immediately after school. In support of their convenience argument, plaintiffs presented credible evidence that School District transportation was available to members of the Club when they met immediately after school. If the Club is not allowed to meet at the school until after 6:00 p.m., the Club will be required to find an alternative after-school meeting place and to arrange for transportation for students to return home after the meeting.
The Court finds credible plaintiffs' evidence that an after school meeting at the school facility is more convenient to the Club and its members than an evening meeting or a meeting at a non-school facility. Restriction of access to a nonpublic forum, however, need only be reasonable. Once the Court finds that the regulation is valid and reasonable, the Court need not determine whether other, more reasonable, alternatives are available. Additionally, plaintiffs' "convenience" argument is not persuasive because access to a nonpublic forum is not required by the First Amendment merely because that forum is "the most efficient means of delivering the speaker's message." Cornelius, 473 U.S. at 809, 105 S.Ct. at 3452.
As to plaintiffs' contention that the Club will be destroyed if not allowed access from 3:00 to 4:00 p.m., the Court finds that the evidence does not support this assertion. For several years prior to meeting at the Ladue Junior High School, the Club met in private homes after school or in the evening. Transportation for the Club members was provided by parents. Each parent to testify at trial testified to the importance of the Club to them and to their children. The minor plaintiffs who testified also stated that the Club was very important to them and that they wanted to continue to attend Club meetings. Each parent and student testified to the variety of after-school and evening activities in which the students were involved. The students and their parents managed to arrange transportation to all of these other activities. Although the Court does not doubt that some difficulties will arise in arranging for meetings of the Club, the Court does not find credible the assertion that the Club will be destroyed by any such inconvenience.
The Court thus finds that the Amended Use Policy did not create a limited open forum from 3:00 to 6:00 p.m., but that the School District facilities are a nonpublic forum during that time period. The Court also finds that the School Board's justifications for closing the forum during those hours were reasonable. The Court must now determine whether, although facially reasonable, those justifications were merely a facade for viewpoint based discrimination.
Plaintiffs contend that the sole reason defendants amended the Use Policy was to oust the Club from meeting in school facilities and to destroy the Club. Plaintiffs presented evidence, as did defendants, that criticism from some members of the community about the religious nature of the Club was the catalyst for amending the Policy. The Court *1247 finds that the citizen comments and complaints about the Club were the primary factor leading to the School Board's examination of the 1986 Use Policy and eventual adoption of the Amended Use Policy. This finding, however, does not mean that the School Board engaged in unconstitutional discrimination in closing the school facilities immediately after school.
A public school district must "retain the authority to refuse ... to associate the school with any position other than neutrality on matters of political controversy." Hazelwood School Dist., 484 U.S. at 272, 108 S.Ct. at 570. Furthermore, this Court should be "reluctan[t] to attribute unconstitutional motives to the States, particularly when a plausible secular purpose ... may be discerned" for the State's action. Mueller v. Allen, 463 U.S. 388, 394-95, 103 S.Ct. 3062, 3066-68, 77 L.Ed.2d 721 (1983).
The Court has found reasonable the School Board's concern that continued access by the Club immediately after school might result in an Establishment Clause violation. The complaints raised by citizens included concern that the group met immediately after school. Evidence was presented, and the Court finds, that members of the School Board believed that an appearance of endorsement by the School District of the religious views of the Club could result from the Club meeting immediately after school. An appearance of endorsement might violate the Establishment Clause requirement that the state remain neutral on matters of political or religious controversy. See Board of Educ. of the Westside Community Schools v. Mergens, 496 U.S. 226, 266, 110 S.Ct. 2356, 2380, 110 L.Ed.2d 191 (1990) (Marshall, J. and Brennan, J., concurring) ("Neutrality toward religion, as required by the Constitution, is not advanced by requiring a school that endorses the goals of some noncontroversial secular organizations to endorse the goals of religious organizations as well.").
The Court further finds that no evidence supports plaintiffs' contention that the School Board acted with the intent to destroy the Club because of its religious activities. All of the evidence presented supports the conclusion that the Board heard evidence both pro and con regarding the Club; that all comments were seriously considered by the Board members; and that the Board members sought legal advice from their attorney as how best to meet the needs of the community without risking a constitutional violation. The Court finds no credible evidence to support a finding that the School Board acted with an unconstitutionally discriminatory motive in amending the Use Policy.
The Court thus finds that the Amended Use Policy does not create a limited public forum from 3:00 to 6:00 p.m., that the restriction on access to School District facilities is reasonable, and that the policy was adopted for constitutionally permissible reasons. Even if the Court were to find that the Amended Use Policy creates a limited public forum during the period immediately after instructional time because of the access allowed by the Scouts and to athletic facilities, plaintiffs must prove that the Club is similar in character to the limited groups allowed access.[4]Perry Educ. Ass'n, 460 U.S. 37, 47-48, 103 S.Ct. 948, 956-57, 74 L.Ed.2d 794 (assuming the existence of a limited public forum, "the constitutional right of access would in any event extend only to other entities of similar character.").
The evidence presented at trial supports a finding that the Scouts are primarily a secular organization engaging in secular activities. The purpose of Scout meetings is for the young persons involved to have fun, to support the ideals of Scouting, education, and reinforcement of moral values. Although Scouts may earn religion badges, those badges are earned at home or in the scout's place of worship.
Scouting activities include camping, woodworking, swimming, non-religious games, and other secular, skill-oriented activity. Other than the single reference to God in the Scout oath, all activity at Scout meetings is of a secular nature. A review of the Scout manuals *1248 introduced into evidence reveals limited reference to God, to the "Great Master" or to reverence. The great majority of the manuals is devoted to describing different Scouting activities and skills as well as how to earn merit badges. The descriptions of the purpose of Scouting do not include any reference to God or to religion.
The Club, by contrast, was initiated to teach the young members Christian values. Each parent who testified at trial testified to the importance of the religious aspect of the Club and that a purpose of the Club was to pass along Christian faith and morality to the student members of the Club. A typical Club meeting consists of an opening prayer, snack, activity, Bible lesson, and closing prayer. Plaintiff Chris Hirt testified in his deposition that he liked the Club because it gave him an opportunity to relate to Christian friends and that it was important to keep the Club going so that others might become Christian. Deposition of Chris Hirt, taken October 27, 1992, at 18.
Although both the Club and the Scouting program are concerned with the moral development of youth, the Club is fundamentally a Christian organization, the primary purpose of which is to instill and reinforce Christian faith and values in its members. The Scouts, by contrast, are a secular organization, the primary purpose of which is to develop skills and moral character not related to any religious faith. Any incidental reference to God or the "Great Master" does not convert the secular nature of the Scouts into a religious nature. Lamb's Chapel, 959 F.2d at 388. The Court, therefore, finds that the Club and the Scouts are not of similar character. Accordingly, even were the Court to find that a limited public forum was created from 3:00 to 6:00 p.m., the Club could not claim a right to access to the School District facilities during that time.
Plaintiffs' final argument on their Free Speech claim is that the Amended Use Policy is facially unconstitutional because of the no-religion proviso for use by the Scouts. Plaintiffs contend that they have standing to assert the constitutional rights of the Scouts under the "overbreadth doctrine."
In order for a party to have standing to assert a constitutional claim, Article III of the United States Constitution generally requires a party to show some actual or threatened injury to that party that is likely to be redressed by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The Supreme Court has determined that, under some circumstances, a party may challenge the constitutionality of a statute that is facially overbroad.
Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the courtthose who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985).
Board of Airport Comm'r v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). In order for a statute or regulation to be found facially unconstitutional under this doctrine, the statute must be "substantially" overbroad. Id.
Plaintiffs do not have standing to assert the alleged First Amendment rights of the Scouts under the overbreadth doctrine. First, plaintiffs have failed to show that their "own speech or conduct may be prohibited" under the no-religion proviso to Scout meetings. This Court has determined that the School District acted constitutionally in restricting access to school facilities immediately after instructional time. Plaintiffs have no right to access under the Amended Use Policy from 3:00 to 6:00 p.m. The no-religion proviso applies only to Scouts and does not prohibit plaintiffs' speech.
Additionally, the Court finds that the no-religion proviso is not "substantially" overbroad. The regulation at issue in Jews for Jesus "reache[d] the universe of expressive activity, and, by prohibiting all protected expression, purport[ed] to create a virtual `First Amendment Free Zone'...." 482 *1249 U.S. at 574, 107 S.Ct. at 2572 (emphasis in original). The no-religion proviso reaches only religious speech. In a nonpublic forum the state may restrict speech based on its content, and the Court finds that, under these circumstances, the proviso is not overbroad. Thus, the Court finds plaintiffs do not have standing to challenge the no-religion proviso, and the Court will not address any constitutional claim regarding the proviso.[5]
For all of the reasons stated herein, the Court finds for defendants on Count I of plaintiffs' complaint. The Court now turns to Count II wherein plaintiffs allege that the Amended Use Policy violates the Religion Clauses of the First Amendment. Plaintiffs contend that the Amended Use Policy is not neutral, in purpose or effect, as to religion and thus violates both the Establishment Clause and the Free Exercise Clause.
The First Amendment forbids all laws "prohibiting the free exercise" of religion. U.S. Const.Amend. I. The Free Exercise Clause prohibits the government from regulating, prohibiting, or rewarding any religious belief. Sherbert v. Verner, 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). Free Exercise of religion "means, first and foremost, the right to believe and profess whatever religious doctrine one desires. Thus, the First Amendment obviously excludes all `governmental regulation of religious beliefs as such.'" Employment Div., Dep't of Human Resources v. Smith, 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990) (emphasis in original) (quoting Sherbert v. Verner, 374 U.S. at 402, 83 S.Ct. at 1793).
"[T]he right to the free exercise of religion unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions...." McDaniel v. Paty, 435 U.S. 618, 626, 98 S.Ct. 1322, 1328, 55 L.Ed.2d 593 (1978). Plaintiffs do have a First Amendment right, under the Free Exercise Clause, to meet as a religious Club and to pass on the values and precepts of Christianity. This Court must determine whether the Amended Use Policy unconstitutionally regulates or prohibits plaintiffs' free exercise of religion.
This Court has found, in the context of Free Speech analysis, that the Amended Use Policy is not an unconstitutional regulation of plaintiffs' speech. Neither does the Amended Use Policy regulate or prohibit plaintiffs' free exercise of religion. Plaintiffs are free to meet and practice their religious beliefs without being refused any right provided to other citizens within the School District. Although plaintiffs do enjoy a free exercise right to meet as a religious Club, that right is not infringed by the requirement that, if plaintiffs wish to exercise the right in School District facilities, they must comply with the valid regulations on the use of those facilities. Additionally, plaintiffs' right to free exercise of their religion does not include a right to engage in that exercise in the School District's facilities from 3:00 to 6:00 p.m. Accordingly, the Court finds for defendants on plaintiffs' Free Exercise claim.
Finally, plaintiffs claim that the Amended Use Policy violates the Establishment Clause because it is facially non-neutral as to religion. A state statute or regulation is valid under the Establishment Clause if "(1) it has a `secular ... purpose,' (2) `its ... primary ... effect ... neither advances nor inhibits religion,' and (3) it does not `foster an excessive government entanglement with religion.'" Mergens v. Bd. of Educ. of Westside Community Schools, 867 F.2d 1076, 1079 (8th Cir.1989) (quoting Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111-12, 29 L.Ed.2d 745 (1971). Plaintiffs contend that, in restricting access to plaintiffs and other religious organizations, the School District demonstrates hostility toward religion and thus violates the Establishment Clause. The Court disagrees.
This Court has found, in its analysis of this case under the Free Speech clause, that defendants did not amend the 1986 Use Policy because of an unconstitutionally discriminatory *1250 motive. The Court finds that the School District acted with the valid secular purpose to maintain the school facilities as a nonpublic forum from 3:00 to 6:00 p.m. and to avoid the appearance of taking "any position other than neutrality on matters of [public] controversy." Hazelwood School Dist., 484 U.S. at 272, 108 S.Ct. at 570. Although defendants were concerned with an appearance of non-neutrality based on religion, this concern does not convert the valid secular purpose into a non-secular purpose.
Secondly, the primary effect of the Amended Use Policy neither advances nor inhibits religion. The policy is neutrally applied to all religious, political, and philosophical groups. The primary effect of the policy was to create a nonpublic forum from 3:00 to 6:00 p.m. on school days. All community groups, with the exception of Scouts and groups using the athletic facilities, are excluded from use of School District facilities from 3:00 to 6:00 p.m., regardless whether the group is of a religious or secular nature. Plaintiffs contend that the policy inhibits religion because of the inconvenience to the Club of making alternative arrangements for student meetings. This effect, however, is not the principal or primary effect of the Amended Use Policy, but is merely incidental to the primary effect.
Finally, the Amended Use Policy does not foster an excessive entanglement with religion. Plaintiffs urge that an excessive entanglement must occur because the School Board will be required to monitor the Scout meetings to ensure that the Scouts comply with the no-religion proviso. The Board, however, contends that no entanglement will occur because it is not necessary for the Board to monitor the content of the Scout meetings. The Board expects that the Scouts, as well as any other group using School District facilities, will comply in good faith with any restrictions on that use. This Court finds that plaintiffs have been unpersuasive on the issue of excessive entanglement. Plaintiffs have failed to establish that any greater obligation to monitor the use of school district facilities arises from the no-religion proviso than from any other rule or regulation governing use of the facilities. Thus the Court finds that no excessive entanglement with religion has been established.
Furthermore, under the Free Speech clause analysis, this Court found that the School District acted with constitutional motives and valid reasons when it decided to close the forum from 3:00 to 6:00 p.m. The purpose was not to inhibit plaintiffs' practice of religion, but to meet the various needs of all members of the community. Additionally, the School Board acted with concern about the appearance of non-neutrality based on religion. This concern, valid for purposes of Free Speech analysis, should not now be construed as resulting in an unconstitutional effect of inhibiting religion. The Court thus finds for defendants on plaintiffs' Establishment Clause claim.
NOTES
[1] Ms. Cunningham was not reelected at the election for Board members in April, 1992.
[2] The Club has been known by various names, including, but not limited to, the Good Sports Club and Good News Club, the Good Sports Boys Club, Girls Good News Club. No party contends that these various clubs were not predecessors to the plaintiff Club.
[3] Although the Amended Use Policy allows access immediately after instructional time only to athletic facilities and by the Scouts, plaintiffs' arguments that the policy creates a limited public forum focuses on the access granted to the Scouts.
[4] Plaintiffs make no argument regarding their similarity to groups using the athletic facilities and no evidence was presented regarding the character of any such group. The Court will limit its discussion on this issue to the characteristics of the Club and the Scouts.
[5] Plaintiffs raise this same issue in Count II of their complaint. The Court will not address this issue again, but holds that for the same reasons plaintiffs lack standing to contest the constitutionality of the proviso as a violation of Free Speech, they also lack standing to contest the proviso as a violation of the religion clauses.