**Rollen F. STEWART, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA ARMORY BOARD, et al., Defendants.**

**Civ. A. No. 92–0077 (JHG).**

United States District Court, District of Columbia.

Jan. 10, 1992.

*Lane v. Pueblo of Santa Rosa,* 249 U.S. 110, 113, 39 S.Ct. 185, 186, 63 L.Ed. 504 (1919).

Metcalfe C. King, Washington, D.C., for defendants.

Mark Nathan Troobnick, Washington, D.C., for plaintiffs.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiffs Rollen F. Stewart, Steven D. Francis, and Edwin Thate, Jr. initiated this action this date against the District of Columbia Armory Board, Sharon Pratt Kelly,[1] Major General Calvin G. Franklin, Stuart J. Long, and James A. Dalrymple, seeking to enjoin defendants from preventing plaintiffs from displaying religious signs at RFK Stadium. Presently pending is plaintiffs' motion for a temporary restraining order ("TRO") and/or a preliminary injunction ("PI").[2] Having reviewed plaintiffs' pleadings and having considered the arguments advanced by counsel for both sides at an oral hearing held today, plaintiffs' motion for a TRO and PI is granted.[3]

## I. BACKGROUND

On June 22, 1990, the Armory Board adopted a new regulation regarding signs and banners at RFK Stadium. The regulation[4] permits, *inter alia*, the exhibition of signs and banners if the following conditions are met:

(1) The banner shall pertain to the event;

(2) The banner shall not be commercial, vulgar or derogatory; and

(3) The dimensions of the banner shall not exceed 4′ × 6′.[5]

On January 4, 1992, plaintiff Thate placed a scripture sign with the reference "John 3:3" at the 20 yard line of RFK Stadium for view during the Washington

1. Although plaintiffs have named Sharon Pratt Dixon in their Complaint, the Court has substituted Sharon Pratt Kelly as that defendant.

2. With the parties' consent, this Opinion resolves plaintiffs' request for a TRO and request for a PI.

3. At the hearing, the Court granted counsel's various motions for admission *pro hac vice*, denied plaintiffs' motion to reopen Civil Action No. 85–3742, and denied plaintiffs' motion to consolidate the instant action with Civil Action No. 85–3742.

4. The regulation appears in the District of Columbia Register, Volume 37, No. 25, Chapter 29, §§ 2900 *et seq.*

5. For purposes of the motion for a TRO and PI, plaintiffs do not object to the size restriction contained in § 2902.2.

Redskins post-season football game. Thate noticed, however, that the sign was removed during half-time. He placed another sign with the message "Mark 8:36" in the end zone and later noticed that that sign had also been torn. Francis, who watched the January 4, 1992 game on television, observed that a variety of signs— "Hi to Kathy and Don," "Capitol Punishment," "National Defense," and "2 Legit 2 Quit"—remained undisturbed throughout the game. Thate, who attended the game, also noticed that other signs and banners were not removed.

At the hearing, counsel for plaintiffs indicated that although plaintiffs had displayed similar signs on at least one other occasion between June, 1990 and January 4, 1992, the signs had never before been removed. In addition, defense counsel stated that with the exception of those that exceeded the size limitation, to his knowledge, the only signs that have been removed pursuant to the regulation's "content" restriction belong to plaintiff. Finally, counsel for defendants indicated that plaintiffs' signs were removed by defendants' employees at the direction of the National Football League ("NFL").[6] Officials of the NFL did not request that any other signs be removed from the Stadium.

## II. DISCUSSION

■ A temporary restraining order may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order.

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *accord, Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). This test is not a wooden one, for as our court of appeals has noted, relief may be granted "with either a high probability of success and some injury, or *vice versa." Cuomo v. United States Nuclear Regulatory Commission,* 772 F.2d 972, 974 (D.C.Cir.1985) (per curiam) (emphasis in original). *See also Holiday Tours,* 559 F.2d at 843.

### A. Likelihood of Success on the Merits

Under either the public forum doctrine or overbreadth/vagueness analyses, it appears, based on the present record, that plaintiffs have a substantial likelihood of success on the merits.[7]

### 1. Public Forum Doctrine

The Armory Board is an independent government agency established by Congress and charged with the responsibility of constructing, maintaining, and operating RFK Stadium; because the Stadium is government-owned property, the instant case can be analyzed under the rubric of the public forum doctrine.

The Supreme Court has suggested an analytical framework for deciding whether RFK Stadium is a public forum. First, the Court must consider whether the conduct or speech in question is protected speech. Next, the Court must analyze the nature of the forum and its public and non-public characteristics. And finally, the Court must evaluate the justification for exclusion viewed against the requisite constitu-

---

6. The National Football League does not have a contractual relationship with the Armory Board.

7. Although the Court of Appeals for this Circuit has warned that "where government action is challenged on first amendment grounds, a court should be especially 'unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove those disputed factual assertions upon

which they rely,'" the Complaint was filed a few hours ago with a motion for a TRO/PI, and plaintiffs wish to display signs at the football game on January 12, 1992. *Stewart v. District of Columbia Armory Board,* 863 F.2d 1013, 1017–18 (D.C.Cir.1988) (quoting *City of Los Angeles v. Preferred Communications,* 476 U.S. 488, 494, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986)). Therefore, the Court must render its decision without the benefit of a fully developed record.

tional standard.[8]

First, there can be little question that the signs at issue constitute protected speech. The Supreme Court has expressly held that religious expression enjoys the same protection as "political" speech under the First Amendment. *See Widmar v. Vincent,* 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981).

■ Second, in considering the nature of the forum, the Stadium need not be a place that historically has been devoted to the free exchange of ideas, such as streets and parks;[9] rather, the Stadium may also be considered a public forum by virtue of government designation. *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985).

The "touchstone" for determining whether government property is a designated public forum is the government's intent in establishing and maintaining the property. *Id.* at 802, 105 S.Ct. at 3449. As the Court of Appeals explained, "Intent is not merely a matter of stated purpose; rather, it is ... a matter to be inferred from a number of factors," including "the character of the forum in the nature of the property, its compatibility with expressive activity, and the *consistent* policy and practice of the government." *Stewart,* 863 F.2d at 1016, 1017 (emphasis in original).[10] Moreover, "stadiums may not have the same public forum status in all places at all times." *Id.* at 1018 n. 8.

Based on the present record, there is sufficient evidence for the Court to conclude that RFK Stadium is a public forum.

While defendants emphasized at oral argument that the Stadium draws all of its revenue from leases and the sale of tickets, as defendants had to concede, the government also intended, in operating the Stadium, "to build civic pride, identity and cohesion through sponsorship of public events which bring citizens together for a common purpose." *Stewart,* 863 F.2d at 1019. Moreover, while the Armory Board contends that its consistent policy and practice since June, 1990 have been to remove signs that do not comply with its regulations, there is evidence in the record to the contrary.[11] As illustration, plaintiffs suggest that they had displayed similar signs over the course of the last several years, and those signs had never before been removed.

■ Third, the Court cannot find that there is a compelling state interest in prohibiting religious speech at the Stadium. At this stage of the proceedings, the only policy reason defendants advanced for prohibiting plaintiffs' message was concern about offending fans, football team owners, tenants, and, in particular, the NFL, a non-tenant, at whose direction defendants were prompted to remove plaintiffs' January 4, 1992 signs. And "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969).

Nevertheless, even were the Court to accept defendants' contention that RFK

**8.** Restrictions on speech in a public forum must be necessary to accomplish a compelling state interest and must be narrowly tailored to that end. In contrast, restrictions on speech in a nonpublic forum must only be " 'reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.' " *Stewart v. District of Columbia Armory Board,* 863 F.2d 1013, 1016 (D.C.Cir.1988) (quoting *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).

**9.** The Court need not reach plaintiffs' more tenuous argument *that a stadium, like a park or street, is a traditional public forum.*

**10.** The compatibility inquiry enters into the first amendment analysis in two ways: (1) compatibility provides some evidence of the government's intent; and (2) once the nature of the forum has been determined, compatibility is relevant to the ultimate determination of whether restrictions on speech are either reasonable or narrowly tailored and based on a compelling state interest.

**11.** "Mere statements of policy, if consistently contradicted by practice, are not dispositive." *Stewart,* 863 F.2d at 1021.

Stadium is not a public forum, there is evidence in the present record that the regulation is unreasonable and that its enforcement may represent " 'an effort to suppress expression merely because public officials oppose the speaker's view.' " *Stewart*, 863 F.2d at 1016 (D.C.Cir.1988) (quoting *Perry Education Association*, 460 U.S. at 46, 103 S.Ct. at 955).

Defendants conceded at the hearing that they were specifically instructed by the NFL to remove only the sign containing the religious message and were not directed to remove the signs, which stated, "Hi to Kathy and Don," "Capitol Punishment," "2 Legit 2 Quit." While it is unclear whether the reason for allowing certain signs to remain and other signs to be removed is the result of the NFL's or defendants' officials' determination that some signs complied with the regulations and plaintiffs' banners did not, or because defendants objected to the message, there was at least a suggestion that plaintiffs' signs were removed because defendants disagreed with the messages contained therein. In any event, it appears that the regulation is unreasonable because it is overbroad and vague.

### 2. Overbreadth/Vagueness Doctrines

■ Even had the Court concluded that RFK Stadium is not a public forum and found no evidence of viewpoint discrimination, plaintiffs also have a substantial likelihood of success on the merits in challenging the regulation as overbroad and vague. As illustration, the regulation prohibits "vulgar" or "derogatory" speech, but fails entirely to define those terms. In addition, the regulation prohibits speech that does not "pertain to the event," but fails to guide anyone in determining what speech pertains to an event and what speech does not. And as the Supreme Court suggested in a similar case in which the Board of Airport Commissioners of the City of Los Angeles sought to prohibit expressive activities at the airport that were unrelated to airport-related activities,

> Much nondisruptive speech—such as the wearing of a T-shirt or button that contains a political message—may not be

'airport related,' but is still protected speech even in a non-public forum.... Moreover, the vagueness of this suggested construction itself presents serious constitutional difficulty. The line between airport-related speech and nonairport-related speech is, at best, murky.

*Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, 107 S.Ct. 2568, 2573, 96 L.Ed.2d 500 (1987). In any event, the fact that defendants' officials alone have the power to decide in the first instance whether a given activity is related to the event itself presents serious constitutional difficulty. As the Supreme Court suggested in *Jews for Jesus*, "Such a law that 'confers on police a virtually unrestrained power to arrest and charge persons with a violation' of the resolution is unconstitutional because '[t]he opportunity for abuse, especially where a statute has received virtually open-ended interpretation, is self-evident.' " 482 U.S. at 576, 107 S.Ct. at 2573 (citation omitted).

### B. Balancing the Harms

■ In addition to finding that plaintiffs have a substantial likelihood of success on the merits, it also appears that the potential harm to plaintiffs in denying their motion substantially outweighs the harm to defendants in allowing plaintiffs to display their signs. As the Supreme Court has suggested, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

### C. The Public Interest

Whatever public interest there may be in limiting inconvenience to Armory staff, or possibly offending fans, owners, and professional associations, the public clearly has an interest in free speech. The public interest in this case will be served by ensuring that plaintiffs' First Amendment rights are not infringed before the constitutionality of the regulation has been definitively determined.

## III. CONCLUSION

Accordingly, for the reasons expressed above, it is hereby

ORDERED that plaintiffs' motion for a TRO and PI is granted; it is

FURTHER ORDERED that defendants are enjoined from preventing plaintiffs from displaying signs with religious content at RFK Stadium; it is

FURTHER ORDERED that plaintiffs shall post a bond in the amount of $250 cash, without surety, as security for the payment of such costs and expenses as may be incurred or suffered by the defendants if it should be determined that they have been wrongfully enjoined or restrained; it is

FURTHER ORDERED that discovery shall terminate on March 10, 1992;[12] it is

FURTHER ORDERED that cross-dispositive motions shall be filed no later than March 31, 1992; oppositions thereto shall be filed no later than April 20, 1992; and replies, if any, shall be filed no later than April 30, 1992. There shall be no extensions of these dates.

There shall be no stay of this Order for the same reasons plaintiffs' motion for a TRO/PI was granted.

IT IS SO ORDERED.

12. All discovery disputes will be referred to a     Magistrate Judge.