Rev. Guy Anthony **AUBREY**, Plaintiff,

v.

The **CINCINNATI REDS**,
et al., Defendants.

No. C–1–93–257.

United States District Court,
S.D. Ohio, W.D.

Dec. 28, 1993.

---

**2.** *See* Finding of Fact 25.

James J. Knicely, Knicely & Cotorceanu, P.C., Williamsburgh, VA, Thomas S. Neuberger, Willmington, DE, Thomas W. Condit, Condit & Dressing, Cincinnati, OH, for plaintiff.

Stephen Allison Bailey, Lindhorst & Dreidame and James Francis McCarthy, III, City of Cincinnati, Cincinnati, OH, for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment (doc. 14), the Response of the City of Cincinnati (doc. 17), the Response of the Cincinnati Reds (doc. 19), the Supplemental Response of the City of Cincinnati (doc. 20), the Plaintiff's Reply Brief on The First Amendment Issue (doc. 22), and the Plaintiff's Reply Brief on the Monell Issues (doc. 23).

### BACKGROUND

The Plaintiff, the Rev. Guy Anthony Aubrey, appears again before the court seeking to display his biblical message at Riverfront Stadium during a Cincinnati Reds baseball game. In a previous case the Rev. Aubrey successfully challenged the Reds' 1990 banner policy. *Aubrey v. City of Cincinnati*, 815 F.Supp. 1100 (S.D.Ohio, 1993) (*"Aubrey I"*). The 1990 policy required that signs or banners intended to be displayed during baseball games must be "in good taste." However, the meaning of "good taste" was not defined in the policy and was basically a matter for the Reds management to determine.

When the Rev. Aubrey attempted to display his sign advocating the biblical passage "John 3:16"[1] at a world series game, the Reds' security personnel confiscated the banner. Rev. Aubrey sued the Reds, their security service, and the City of Cincinnati for violating his right of free speech under the First Amendment. In granting partial summary judgment, we held that this "good taste" standard, as written, was substantially vague and overbroad. *Aubrey I*, 815 F.Supp. at 1106. The parties subsequently settled the remaining issues in the case.

Consequently, on March 15, 1993 the Reds announced a new Sign And Banner Policy ("the Policy" or "the 1993 Policy") which is set forth in the 1993 Cincinnati Reds' Official Yearbook/Program which states:

*DISPLAY OF SIGNS AND BANNERS*

Absolutely no signs or banners are permitted to be displayed in the Blue seating section. Signs or banners displayed in other seating sections will be permitted only if the signs pertain directly to baseball and are not: Vulgar, indecent, obscene or inappropriate for viewing by children; do not contain any language likely to provoke a breach of the peace; do not advertise a product or service or interfere with displays of paid commercial advertisement; do not pose a safety hazard or obstruct or interfere with the vision of those participating in or viewing the event or cover existing signage; do not exceed the dimensions of two feet by three feet. Any signs, banners or displays not conforming to the above will be removed unless they have specific written approval, in advance, from the Stadium Operations Division of the Cincinnati Reds.

On April 18, 1993, the Plaintiff attended a Cincinnati Reds' baseball game with the intention of displaying two signs which he had brought with him. The signs read "John 3:16" and "Go Reds John 3:16." He purchased a ticket for the Green Level and proceeded to Gate 10. There he inquired if he would be permitted to bring his signs into Riverfront Stadium. The Cincinnati Reds, through Timothy O'Connell, the Reds Stadium Operations Director, and Sgt. Howard Whitson, a uniformed Cincinnati police officer and the Reds' Director of Security informed the Plaintiff that he could not display the signs at the game. As a result Rev. Aubrey has again sued the Reds and the City of Cincinnati seeking damages, declaratory judgment and injunctive relief under 42 U.S.C. § 1983. At a hearing on Plaintiff's Motion for a Temporary Restraining Order, held April 26, 1993, the Reds, through their counsel, announced that rather than proceed with the hearing, the Reds would revoke the banner policy and not permit any banners to be displayed at the stadium other than commercial advertising for which fees are paid. At that time, counsel for the Plaintiff agreed that the Reds could constitutionally prohibit all banners other than paid commercial advertisements.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.*, 886

---

1. "For God so loved the world that he gave his only begotten Son, that whosoever believeth in him should not perish, but have everlasting life." King James Version, John 3:16.

F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino*, 980 F.2d at 405.

As the Supreme Court stated in *Celotex*, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino*, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino*, 980 F.2d at 405 (quoting *Inter–Royal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

■■■ Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

The Plaintiff asserts that the 1993 Cincinnati Reds' Sign and Banner Policy violates his constitutional rights as a matter of law. He offers several arguments in support of his claim. First he contends that the policy is impermissibly vague and overbroad in violation of the First and Fourteenth Amendment. Further, the Plaintiff claims that the City has created an open public forum at Riverfront Stadium in which the Reds' policy constitutes impermissible content discrimination or in the alternative, that the policy constitutes unreasonable regulation of speech in a non-public forum. Since we agree with the Plaintiff that the Sign and Banner Policy as articulated in the Reds' 1993 Yearbook, was substantially vague and overbroad, we need not reach the forum issue.

■■■ It is well established constitutional law that in the area of freedom of expression a regulation may be subject to facial review and invalidation. *Forsyth County v. Nationalist Movement*, —— U.S. ——, ——, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992); *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). When a policy does not articulate objective standards by which the regulation of speech can be applied but rather leaves the decision to the whim of the administrator, then the policy must fail as vague and overbroad. *Forsyth County*, —— U.S. at ——, 112 S.Ct. at 2403. The First Amendment prohibits such unbridled discretion. *Id.* Because of Rev. Aubrey's successful challenge in *Aubrey I*, the Cincinnati Reds adopted their 1993 Sign and Banner Policy in an apparent attempt to pass constitutional muster. In light of this, the Reds' 1993 Policy is facially even more flawed than the 1990 Policy.

The 1993 Policy bears a resemblance to a sign and banner policy approved by the District of Columbia District Court in the settlement of a similar dispute at R.F.K. Stadium. *See Thate v. D.C. Armory Board*, 804 F.Supp. 373, 377 (D.C.D.C.1992). However, the Reds' Policy differs from the R.F.K. Policy in constitutionally significant respects.

*Baseball Related*

■ The Reds' Policy permits signs "only if said signs pertain directly to baseball." This language is noticeably absent from the new R.F.K. Policy, undoubtedly because the D.C. District Court had earlier indicated that "pertaining to the event" language gives rise to the opportunity for abuse. *Stewart v. D.C. Armory Board*, 789 F.Supp. 402, 406 (D.C.D.C.1992). The *Stewart* court based its finding on a Supreme Court case in which the Airport Commissioners of the City of Los Angeles sought to prohibit all expressive activities at the airport unless they were airport-related. The Supreme Court held that

Much nondisruptive speech . . . may not be "airport related," but is still protected speech even in a nonpublic forum. . . . Moreover, the vagueness of this suggested construction itself presents serious consti-

tutional difficulty. The line between airport-related speech and nonairport-related speech is, at best, murky.

*Board of Airport Comm'rs,* 482 U.S. at 576, 107 S.Ct. at 2573 (citations omitted).

Furthermore, the Reds, themselves, have in the past demonstrated the arbitrariness of a "pertain to baseball" standard. In *Aubrey I,* the Reds maintained that what they meant by their "good taste" standard was actually that a sign must be "baseball-related." *Aubrey I,* 815 F.Supp. at 1104. In that case we found examples to illustrate the inherent arbitrariness of this standard.[2]

### "OR" vs. "AND"

The 1993 Policy also prohibits signs which are "Vulgar, indecent, obscene *or* inappropriate for viewing by children; ...." (emphasis added). This is in contrast with the R.F.K. Policy which uses exactly the same language except for the conjunctive "and" rather than the disjunctive "or." While the R.F.K. version has constitutional basis, the Reds' version is flawed. Unquestionably there is constitutional footing for the prohibition of "obscene" speech. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Therefore, a provision which excludes "obscene" signs would pass constitutional review. However, since the Reds' Policy uses the disjunctive "or" each of the elements must pass constitutional analysis. The Supreme Court has specifically rejected restrictions based on a "vulgar" or "indecent" standard. *See Cohen v. California,* 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971) ("one man's vulgarity is another man's lyric"). Finally the criterion of "inappropriate for viewing by children," standing alone, is hopelessly vague and overbroad.

### Prior Approval

The most objectionable section of the Reds' 1993 Banner and Sign Policy is the last sentence. "Any signs, banners or displays not conforming to the above will be removed, unless they have specific written approval, in advance, from the Stadium Operations Division of the Cincinnati Reds." It is difficult to understand what the Reds intended by this statement. On its face it seems to say that despite their attempts to create a well articulated policy, the Reds retain the right to allow or disallow non-conforming signs at will. This provision, taken literally, empowers the Stadium Operations Division with totally arbitrary review of all expression which otherwise violates the Sign and Banner Policy. It is precisely this sort of capricious power that is condemned by First Amendment jurisprudence.

### Responsible Parties

As previously noted, the Cincinnati Reds abandoned their 1993 Sign and Banner policy, analyzed herein, early in the baseball season and replaced it with a ban on all expression except paid commercial advertising. Therefore, the Plaintiff's motion for injunctive relief is moot. Furthermore, neither the Reds nor the City of Cincinnati in their briefing in opposition to the Plaintiff's Motion for Partial Summary Judgment defended the originally published 1993 Sign and Banner Policy, under which the Rev. Aubrey's sign was confiscated on April 18, 1993. The City, however, does reargue the issue of its own responsibility for the Reds' Policy at some length. However, in this respect this case is identical to *Aubrey I.* In that case we thoroughly addressed the City's role in operating Riverfront Stadium, including the use of on and off duty Cincinnati Police personnel and the issuance of a Public Assembly License and a Public Assembly Permit. *Aubrey I,* 815 F.Supp. at 1104–1106. None of these relationships have changed.

---

**2.** In *Aubrey I* we discovered that

The sign "God loves the Cincinnati Reds" would be acceptable to the Reds' Director of Operations, but perhaps would not be acceptable to the security personnel enforcing the banner policy. *Compare O'Connell Deposition,* at 23, 25. The Director of Operations thought that "Go Reds and get well Dave McCoy" was permissible, even though Dave McCoy is not a baseball player. *O'Connell Deposition,* at 81, 122–23. Finally, the Reds determined that signs favoring the use of military force against Iraq were in good taste [i.e. baseball related], and thus were permissible during the 1990 World Series games, even though such signs had nothing to do with baseball.

*Aubrey I,* 815 F.Supp. at 1104.

Therefore, we see no reason to question our original holding that "the City's policy to enforce the Reds' banner policy is affirmatively linked to the alleged denial of Mr. Aubrey's constitutional rights." *Id.* at 1106; *see Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

## CONCLUSION

We find it appropriate at this point to quote from our previous holding in *Aubrey I.*

> This Court is making a limited decision today. We are not determining whether Riverfront is a public or nonpublic forum. We are not holding that Mr. Aubrey has a constitutional right to hang religious banners at Riverfront Stadium. We are not holding that the Defendants may not limit speech during a baseball game. We are not deciding whether Mr. Aubrey may recover damages. Nevertheless, we are holding that the Reds' banner policy, as written, is substantially vague and overbroad.

*Aubrey I*, 815 F.Supp. at 1106.

Accordingly, the Plaintiff's Motion for Partial Summary Judgment is granted with regard to the facial validity of the 1993 Sign and Banner Policy of the Defendants City of Cincinnati and the Cincinnati Reds, as printed in the 1993 Official Reds' Yearbook/Program, in force and effect as of April 18, 1993.

SO ORDERED.