**Michael LEBRON, Plaintiff,**

v.

**THE NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) and Transportation Displays Incorporated, Defendants.**

**No. 92 Civ. 9411(WK).**

United States District Court, S.D. New York.

Oct. 21, 1997.

Gloria C. Phares, Patterson, Belknap, Webb & Tyler LLP, New York City, for Plaintiff.

William G. Ballaine, Landman, Corsi, Ballaine & Ford P.C., New York City, for Defendant Amtrak.

Edward M. Spiro, Morvillo, Abramowitz, Grand, Isason & Silberberg, P.C., New York City, for Defendant TDI.

### OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

### PROCEDURAL HISTORY

The procedural history of this case is perhaps more interesting than the questions now before us. It originated in 1992 when plaintiff, an artist and graphic designer, filed a complaint charging that defendants Transportation Displays Incorporated ("TDI") and The National Railroad Passenger Corporation ("Amtrak") had caused him damage by refusing to honor a contract to display a creation of his on a large billboard which is known as the "Spectacular" and situated in Pennsylvania Railroad Station. The complaint contained four counts. The first three alleged various violations of constitutional due process, all predicated on the assumption that Amtrak, in refusing to permit the display of plaintiff's creation, was engaged in

governmental action. The remaining count asserted a contract claim under New York state law, which was expanded in the argument before us to include a claim of promissory estoppel.

The District Court accepted plaintiff's contention that Amtrak had been engaged in governmental action, and directed it to display plaintiff's creation on the Spectacular. It had no occasion to consider any New York state law claim. *Lebron v. National R.R. Passenger Corp. (Amtrak)* (S.D.N.Y.1993) 811 F.Supp. 993. The Court of Appeals, by a divided court, rejected the District Court's ruling that Amtrak was engaged in governmental conduct and thus vacated the grant of relief. Finding that elimination of all claims for constitutional relief had also eliminated jurisdiction to consider any state law claim, it remanded with instructions to dismiss the complaint. *Lebron v. National R.R. Passenger Corp. (Amtrak)* (2d Cir.1993) 12 F.3d 388. The Supreme Court, having granted certiorari, concluded by a divided court that Amtrak had engaged in governmental action, and remanded to the Court of Appeals to consider the factual merits of plaintiff's First Amendment claims. *Lebron v. National R.R. Passenger Corp. (Amtrak)* (1995) 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902.

On remand, the Court of Appeals, again by a divided court, found no factual merit in plaintiff's First Amendment claims and directed dismissal of the complaint so that any state claims could be asserted in a New York state court. *Lebron v. National R.R. Passenger Corp. (Amtrak)* (2d Cir.1995) 69 F.3d 650. Upon plaintiff's motion for reargument, the Court adhered to its original ruling that there was no factual merit in plaintiff's constitutional claims. However, it reconsidered its decision that the state law claims should be dismissed, noting that "[b]ecause ... a full trial has been conducted on an expedited basis, upon written submissions, the interests of judicial economy and fairness to the parties counsel that this litigation be completed in federal court." *Lebron v. National R.R. Passenger Corp. (Amtrak)* (2d Cir.1995) 89 F.3d 39 (internal quotes and citation omitted).

The Supreme Court having denied certiorari, —— U.S. ——, 116 S.Ct. 1675, 134 L.Ed.2d 778 (1996), we are faced with the necessity of applying New York law to plaintiff's remaining claims. Each of the parties has made a motion for summary judgment. Plaintiff has asserted various legal contentions as to New York state law upon which he now bases his state claims. We note at the outset that, without ruling upon them, we accept as valid all of his legal contentions, and dispose of the motions before us purely on a factual basis.

## BACKGROUND

Plaintiff is an artist and graphic designer. His works often contain political themes. TDI is a privately held out-of-home media company that sells advertising space on behalf of transit systems and transportation facilities. One of the transportation facilities for which TDI acts is Amtrak. Among the authorized locations for which TDI obtains advertising is New York's Pennsylvania Station, including the Spectacular. The Spectacular is a curved wrap-around back-lit structure in the main rotunda of the station measuring over ten feet in height and over 100 feet in width. It is situated in one of the principal entryways to the station, facing passengers who come down from the street level to the concourse below on staircases and escalators. Its prominent position, combined with the heavy pedestrian traffic through the station, make the Spectacular a much sought-after space for advertisers.

In August 1991, plaintiff first approached TDI about leasing the Spectacular. Then and throughout his negotiations with TDI he dealt with William B. Schwartz, an account executive for TDI. During these negotiations, Schwartz told plaintiff that the only policy restrictions on advertising for the Spectacular involved obscenity or violence. When Schwartz asked about the nature of his advertisement, plaintiff responded that in general his work was political, although it often looked like advertising, but that he preferred to keep confidential the specific content of the work he was creating for the Spectacular. Plaintiff and Schwartz ultimately reached an agreement whereby plaintiff would lease the

Spectacular during January and February 1993 at a rate of $18,500 a month.

Plaintiff signed the formal agreement in August of 1992, and TDI affixed its signature on November 30. From the beginning of the negotiations through TDI's acceptance of the contract, plaintiff was never told that there was a policy against political advertising on the Spectacular. In fact, TDI had no such policy but Amtrak, unbeknownst to Schwartz, apparently did. The contract, however, which plaintiff had signed in August, specifically provided that all advertising copy was subject to approval of both TDI and Amtrak:

> All advertising copy is subject to approval of TDI and the Transportation Facility concerned [Amtrak] as to character, text, illustration, design, and operation.

> \*   \*   \*   \*   \*   \*

> If for any reason beyond its control TDI shall cease to have the right to continue the advertising covered by this contract, or if the Transportation Facility concerned [Amtrak] should deem such advertising objectionable *for any reason*, TDI shall have the right to terminate the contract and discontinue the service without notice. (emphasis added).

Plaintiff refused to disclose the advertisement or its contents to Schwartz until December 2, 1992, two days after TDI had signed the contract. The work is a photomontage parody of a widely circulated Coors beer advertisement. It includes photographic images of convivial drinkers of Coors beer, juxtaposed with a Nicaraguan village scene in which peasants are menaced by a can of Coors that hurtles towards them, leaving behind a trail of fire, as if it were a missile. An accompanying text, displayed before and after the pictorial, highlights contributions that Coors has made to various right-wing causes, including the Contras in Nicaragua.

Schwartz was surprised when he saw plaintiff's work. He offered plaintiff alternate sites for the advertisement while Amtrak's approval was sought, but plaintiff refused them. TDI forwarded a copy of plaintiff's submission to Amtrak on December 7. Amtrak notified TDI by letter of

December 23 that it was rejecting plaintiff's submission because it was "political". On December 29, TDI advised plaintiff's counsel that the work had been rejected.

## DISCUSSION

As above noted, for the purposes of these motions we are accepting as valid all plaintiff's contentions as to New York law. That is to say we shall assume (1) that TDI is an agent of Amtrak so that Amtrak is bound by any statements Schwartz may have made to plaintiff and is chargeable with all knowledge possessed by TDI; and (2) that Amtrak's apparent absolute right to reject advertising copy "for any reason" is, under New York law, limited by the requirement that such right may be exercised only in complete good faith.

With regard to the facts, we shall accept plaintiff's deposition testimony and characterization of events as truthful. Beyond that, for the purposes of the motions before us, we shall indulge the highly improbable assumption that his recollection of every fact about which he has spoken is infallible. We shall therefore disregard any contrary inferences that may lurk either in Schwartz's deposition or any other evidence before us.

Having carefully reviewed the entire record in light of the foregoing assumptions, we make the following findings and conclusions:

(1) Before plaintiff showed his proposed advertisement to Schwartz two days after the contract had been signed, he had given no one connected with TDI or Amtrak any reason to anticipate the impact such art would have if displayed on the Spectacular.

(2) Amtrak acted in complete good faith in preventing such display.

Continuing to rely exclusively upon plaintiff's deposition and other statements, but this time not accepting them as accurate, we find that:

(3) Plaintiff concealed the nature of his proposed advertisement until after the contract had been signed solely because he realized that if it had not been concealed, there probably would never have been a contract.

We acknowledge that plaintiff repeatedly denied that deception was his motive, but conclude as a matter of law that any verdict necessarily based on an acceptance of such denials would have to be set aside.

We therefore deny plaintiff's motion but grant defendants'; and direct the Clerk to enter judgment dismissing the complaint.

**SO ORDERED.**